UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
DESIREE DE FIGUEROA,

                Plaintiff,

          - against -

NEW YORK STATE, STATE UNIVERSITY
OF NEW YORK AT STONY BROOK, JOHN
PETER GERGEN in his official and individual
capacities, Director, Undergraduate Biology,
and LYNN JOHNSON in her official and
individual capacities, Vice President, Human
Resource Services,

                Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-436 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

On January 26, 2017, Plaintiff Desiree De Figueroa ("Plaintiff"), proceeding *pro se*, initiated this employment discrimination action against New York State, the State University of New York at Stony Brook (the "University"), and two employees of the University—Undergraduate Biology Director John Peter Gergen ("Gergen") and Human Resources Director Lynn Johnson ("Johnson") (the "Individual Defendants") (together with New York State and the University, "Defendants"). Plaintiff alleges violations of the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, Section 1983 of the Title 42 of the United States Code, 42 U.S.C. § 1983 ("§ 1983"), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*[1] (*See Second Amended*

---

[1] Because Plaintiff has clarified that she did not intend to assert a claim of gender discrimination under Title VII of the Civil Rights Act of 1964 (*see* Plaintiff's Affirmation in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp."), Dkt. 26, at 9), the Court does not address the merits of any such claim.

Complaint ("SAC"), Dkt. 15, at 3.)  Currently before the Court is Defendants' motion to dismiss Plaintiff's Second Amended Complaint in full.  (*See* Defendants' Renewed Motion to Dismiss, Dkt. 32; *see also* SAC, Dkt. 15.)  For the reasons stated herein, Defendants' motion is granted in part and denied in part.

## BACKGROUND

### I.     Factual Allegations[2]

Plaintiff has worked in the University's Undergraduate Biology program for over 20 years, and she has held the title of Curator-SL3 since approximately 2006.  (SAC, Dkt. 15, ¶ 3.)  As a Curator-SL3, Plaintiff is responsible for, *inter alia*, acquiring supplies and equipment for instructional facilities, preparing guidelines for instructional exercises, collecting and maintaining live materials, mentoring and training staff and students, supervising student assistants working in the undergraduate biology laboratories, and operating the labs when the Curator is absent.  (*Id.*) Plaintiff was granted tenured status in 2008.  (*Id.*)

In or around 1992, Plaintiff was diagnosed with Crohn's disease, a chronic inflammatory bowel disease that is characterized by inflammation of the gastrointestinal tract.  (*Id.* ¶ 5.)  Like many individuals suffering from Crohn's disease, Plaintiff experiences "flare-ups" every few months, which may last from one day up to a few weeks.  (*Id.*)  When Plaintiff experiences a flare-up, she is unable to work or engage in basic life activities.  (*Id.*)  This action stems from various actions allegedly taken by the University, Gergen, and Johnson between March 2011 and June 2017 in response to Plaintiff's requests for leave to manage her condition.

---

[2] The facts recited in this section are based on the allegations in the Second Amended Complaint, which the Court accepts as true for purposes of Defendants' motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

A.       **Plaintiff's Requests for FMLA Leave**

In January 2007, March 2011, July 2011, and February 2012, Plaintiff requested leave under the FMLA in order to conduct "self-care," seek medical treatment, and rest as necessary to resolve the symptoms of her Crohn's disease.  (*Id.*)  On those occasions, the University's Human Resources Department ("HR"), of which Defendant Johnson is the Director (*id.* ¶ 1), granted Plaintiff's requests for FMLA leave (*id.* ¶ 5.)  Beginning in 2011, however, Gergen began to express his belief that employees within the Undergraduate Biology program should not take FMLA leave.  (*Id.* ¶ 6.)  He became openly hostile to Plaintiff and other employees who requested FMLA leave, stating that they were "screwing the department."  (*Id.* ¶ 7.)  And at a senior staff meeting on March 16, 2011, Gergen spoke disparagingly about employees who had taken FMLA leave.  (*Id.* ¶ 8.)  On the same day, Plaintiff requested that HR remind staff in the Undergraduate Biology program that FMLA and medical information should be kept confidential.  (*Id.* ¶ 9.)

Sometime later, Gergen found out that Plaintiff had informed a colleague about the process for applying for FMLA leave.  (*Id.* ¶ 10.)  Gergen subsequently assigned tasks to Plaintiff that were beyond the responsibilities of her position.  (*Id.*)  In particular, on August 28, 2012, Gergen ordered Plaintiff to help distribute over 1,300 books throughout their department.  (*Id.* ¶ 11.)  Plaintiff did not comply with this directive, as she believed book distribution was not one of her job responsibilities.  (*Id.*)  When Gergen sent a "harassing" email demanding an explanation for her failure to distribute the books, Plaintiff informed Johnson and the Dean of the University about Gergen's email.  (*Id.*)

Around March 26, 2013, Plaintiff filed a request for FMLA leave with HR.  (*Id.* ¶ 12.)  Because Gergen continued to speak disparagingly at senior staff meetings about employees who were taking FMLA leave, Plaintiff again requested that Johnson, as the head of HR, remind Undergraduate Biology staff that employees' FMLA information should be kept confidential.  (*Id.*)

On April 3, 2013, HR denied Plaintiff's FMLA request, and she was accused of forging her FMLA leave request form. (*Id.* ¶ 14.) On April 12, 2013, Plaintiff was hospitalized for four days for treatment of a flare-up of her Crohn's disease. (*Id.* ¶ 15.) On April 24, 2013, Plaintiff met with her doctor in order to discuss her employer's accusation that she had forged her FMLA request form. (*Id.* ¶ 16.) Plaintiff's doctor provided written documentation to HR confirming that he had overseen Plaintiff's completion of the leave request form and had, in fact, personally signed the form. (*Id.* ¶ 17.) Defendants granted Plaintiff FMLA leave *post hoc* based on her re-submitted request. (SAC, Dkt. 15, ¶¶ 17–18; Pl.'s Opp., Dkt. 26, at 13.)

On September 20, 2013, Plaintiff met directly with Gergen. (SAC, Dkt. 15, ¶ 19.) During this meeting, Gergen accused Plaintiff of failing to provide a faculty member with certain materials that Plaintiff had used to teach a course in previous semesters. (*Id.*) Plaintiff alleges that her job duties did not include providing faculty with academic teaching materials, and Gergen had not previously instructed Plaintiff to do so. (*Id.* ¶ 20.) Nevertheless, Gergen verbally accosted Plaintiff, screaming "I want your resignation" in front of faculty, other staff, and students. (*Id.* ¶ 21.) Immediately after this meeting, Plaintiff filed a complaint with HR and sought Johnson's assistance in processing the complaint. (*Id.* ¶ 22.) Johnson and HR did not follow up on Plaintiff's complaint. (*Id.* ¶¶ 22–24.)

On February 11, 2015, Plaintiff's doctor prepared documentation for another FMLA leave request. (*Id.* ¶ 25.) Plaintiff never submitted this request, however, because she feared harassment and retaliation based on her experiences with Gergen and Johnson following her March 2013 request for FMLA leave. (*Id.* ¶ 26.) Plaintiff continues to fear that she will face harassment and retaliation if she requests FMLA leave. (*Id.* ¶ 28.)

### B.      Plaintiff's Application for a Promotion

On March 4, 2015, Plaintiff applied for the position of Assistant Director of the Undergraduate Biology program.  (*Id.* ¶ 29.)  This position is designated as an "SL-4" position, which allows the holder to obtain a higher salary, better opportunities within the University, and more professional contacts than Plaintiff's current position.  (*Id.* ¶ 30.)

Plaintiff was well qualified for the Assistant Director position.  At the time she applied, Plaintiff had worked at the University for over 20 years and had served as a Curator at the SL3 level since 2006.  (*Id.* ¶ 32.)  As a Curator-SL3, Plaintiff had managerial experience, held a New York State credit card, and had already received most of the training and computer access required for the Assistant Director position.  (*Id.* ¶¶ 33–36.)  Additionally, Plaintiff's past performance reviews were outstanding, and she had already achieved tenured status.  (*Id.* ¶ 32.)

Despite Plaintiff's excellent qualifications, she was never seriously considered for the Assistant Director position.  Plaintiff received a first-round interview, but only two of the three members of the search committee attended her interview.  (*Id.* ¶ 39.)  Notably, both members in attendance for Plaintiff's interview were Gergen's subordinates.  (*Id.*)  All other first-round interviews were conducted with all three members of the search committee present.  (*Id.* ¶ 40.)  Following this interview, Plaintiff was not invited to a second-round interview.  (*Id.* ¶ 41.)  While other applicants received timely rejection letters, Plaintiff was forced to specifically request a formal rejection letter.  (*Id.* ¶ 43.)

Ultimately, on June 17, 2015, Plaintiff was informed via a departmental email from Gergen that Nancy Black had been hired for the Assistant Director position.  (*Id.* ¶ 42.)  Prior to this promotion, Black held a laboratory position at the SL2 level and lacked managerial experience and relevant training.  (*Id.* ¶¶ 32–36.)  In fact, Plaintiff had interviewed, supervised, and evaluated Black until 2010.  (*Id.* ¶ 35.)  Plaintiff believes that she was never seriously considered for the

Assistant Director position because Gergen manipulated the hiring process to ensure that Black was chosen for promotion instead of Plaintiff and to retaliate against Plaintiff for taking FMLA leave related to her Crohn's disease.[3] (*Id.* ¶¶ 37, 44.)

### C.    Changes to Plaintiff's Work Requirements and Performance Evaluation

In July 2014, Gergen began to assign Plaintiff more complex work than her co-workers and supervisor, expanding Plaintiff's duties and generally making her job more difficult. (*Id.* ¶¶ 45, 56.) On July 30, 2014, Gergen informed Plaintiff that a new course, Biology 207, was being added to her workload. (*Id.* ¶ 46.) On September 17, 2014, Gergen assigned Plaintiff to assist in supporting a biology club, iGEM, a duty that is typically filled by the Director. (*Id.* ¶ 47.) And in February and March 2015, Gergen expanded Plaintiff's duties in relation to another course, Biology 311, beyond those that had previously been expected of her. (*Id.* ¶ 48.)

In light of the additional work being assigned to her, Plaintiff requested a salary increase and review of her position on February 4, 2015. (*Id.* ¶ 49.) Gergen responded to Plaintiff's request by email, stating "maybe . . . need to move some of these duties to others to obtain parity." (*Id.* ¶ 50.) Plaintiff's duties were not adjusted. (*Id.*) In fact, on April 6, 2015, Plaintiff was asked to take over teaching an additional class until the instructor arrived. (*Id.* ¶ 51.) Due to the lack of adjustment in her duties, Plaintiff placed a formal request for a salary increase and review of her position with her direct supervisor, Mary Bernero, on August 18, 2015. (*Id.* ¶ 50.) Gergen denied this request by email on October 23, 2015. (*Id.* ¶ 52.) In addition to denying Plaintiff's request, Gergen's email accused Plaintiff of wrongdoing and made (unspecified) disparaging and intimidating comments. (*Id.*)

---

[3] The last time that Plaintiff requested FMLA leave was in March and April of 2013. (SAC, Dkt. 15, ¶¶ 12, 15–18; Pl.'s Opp., Dkt. 26, at 13.) Thus, two years passed between Plaintiff's most recent request for FMLA leave and the denial of the Assistant Director promotion.

This pattern continued during the fall 2015 academic semester, when Gergen eliminated support staff for a course that Plaintiff was assigned to, forcing Plaintiff to do extra work for the course. (*Id.* ¶ 57.) Subsequently, in February 2016, Gergen instructed Plaintiff to supervise a night-shift employee, despite the fact that Plaintiff is a day-shift employee. (*Id.* ¶ 53.) When the night-shift employee failed to complete her assignments correctly, Gergen berated Plaintiff for failing to "make sure [the night-shift employee] had everything she needed" and to "step[] in" to make sure tasks were done appropriately. (*Id.* ¶ 54.)

On June 23, 2016, Plaintiff received her annual performance evaluation from her direct supervisor, Bernero. (*Id.* ¶ 58.) The performance evaluation was "outstanding," and Plaintiff read, signed, and returned it to Bernero. (*Id.*) On July 19, 2016, Plaintiff received another version of her performance evaluation that had been edited by Gergen. (*Id.* ¶ 59.) In the new version, Gergen had altered Plaintiff's ratings, included unsubstantiated negative comments and assessments, and reprimanded Plaintiff for her work. (*Id.*) Bernero told Plaintiff that she disagreed with Gergen's revisions to the performance evaluation. (*Id.* ¶ 60.)

On July 19, 2016, Plaintiff went to her union representative to express concern about Gergen's revisions. (*Id.* ¶ 61.) Subsequently, HR rescinded Gergen's negative performance evaluation. (*Id.*) Nevertheless, on August 16, 2016, Gergen added two new courses to Plaintiff's workload, and the next day, he threatened to alter Plaintiff's performance evaluation for the next year. (*Id.* ¶¶ 62, 65.) On September 27, 2016, Gergen reduced the credit limit on Plaintiff's New York State credit card from $50,000 per month to $10,000 per month. (*Id.* ¶ 63.) This made Plaintiff's job more difficult due to the large orders she had to place for up to 7 courses each year. (*Id.*) At an unspecified time in or around January 2017, Plaintiff learned that Gergen had denied her a discretionary bonus. (*Id.* ¶ 66.)

On June 15, 2017, Plaintiff received her annual performance evaluation. (*Id.* ¶ 67.) Bernero indicated that she had met with Gergen and Marvin O'Neal, a Lecturer in the Undergraduate Biology program, at which Gergen and O'Neal had negatively altered Plaintiff's performance evaluation. (*Id.* ¶¶ 68–70.) Soon thereafter, Plaintiff complained about Gergen's alteration of her performance evaluation (*id.* ¶ 71), and she sent Bernero a rebuttal to the performance evaluation (*id.* ¶ 72). In response, Bernero informed Plaintiff that she was instructed by Gergen not to make any changes to Plaintiff's evaluation. (*Id.*) Plaintiff believes that Gergen only became interested in her 2017 performance evaluation after she filed her complaint with the United States Equal Employment Opportunity Commission ("EEOC") on July 23, 2015 and initiated this lawsuit on January 26, 2017. (*Id.* ¶ 74; *see also* EEOC Charge of Discrimination, Dkt. 25-7, at ECF[4] 3; Complaint, Dkt. 1.)

## II.     Administrative Proceedings

On November 14, 2013, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), alleging discrimination on the basis of her gender and disability, as well as retaliation based on her election to take FMLA leave in March/April of 2013. (*See* NYSDHR Complaint Form, Dkt. 25-3, at ECF 3–4.) By a Determination and Order After Investigation dated May 13, 2014, NYSDHR rendered a "No Probable Cause Determination." (*See* Determination and Order After Investigation, Dkt. 25-5, at ECF 2–3.) On June 27, 2014, the EEOC adopted the findings of the NYSDHR and issued a right-to-sue letter. (*See* First Notice of Right to Sue, Dkt. 25-6, at ECF 2.) Plaintiff did not file a complaint in federal court within 90 days of receipt of this letter. On July 23, 2015, Plaintiff filed a second charge with the EEOC, alleging retaliation and discrimination based upon her gender and disability in violation of Title

---

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

VII and the ADA.[5]  (*See* EEOC Charge of Discrimination, Dkt. 25-7, at ECF 3.)  On November 8, 2016, Plaintiff received a second right-to-sue letter from the EEOC.  (*See* Second Notice of Right to Sue, Dkt. 25-8, at ECF 2; SAC, Dkt. 15, at 24.)  Plaintiff then filed this action.  (*See* Dkt. 1.)

## PROCEDURAL HISTORY

Plaintiff's initial complaint was filed on January 26, 2017.[6]  (*See* Complaint, Dkt. 1.)  On April 27, 2017, Plaintiff filed an amended complaint with additional factual allegations to support her claims.  (*See* Amended Complaint, Dkt. 7.)  By letter dated May 16, 2017, Defendants sought leave to file a motion to dismiss the amended complaint.  (*See* Defendants' Pre-Motion Conference Letter, Dkt. 9.)  On July 6, 2017, Judge Azrack held a pre-motion conference with the parties and granted Plaintiff leave to file a second amended complaint.  (*See* July 6, 2017 Minute Entry, Dkt. 12.)  Plaintiff filed her Second Amended Complaint the next day.  (*See* SAC, Dkt. 15.)

On September 5, 2017, Defendants filed a motion to dismiss Plaintiff's Second Amended Complaint for lack of jurisdiction and failure to state a claim.  (*See* Defendants' First Motion to Dismiss, Dkt. 18.)  Defendants' motion was fully briefed on December 26, 2017.  (*See* Defendants' First Motion to Dismiss, Dkt. 25.)  On June 13, 2018, Judge Azrack denied Defendants' motion

---

[5] In her second charge filed with the EEOC, Plaintiff wrote that "Respondent has retaliated against me by rejecting my candidacy for the promotion to the position of Assistant Director of Undergraduate Biology, in violation of Title VII and the ADAA [*sic*]."  (EEOC Charge of Discrimination, Dkt. 25-7, at ECF 4.)  Plaintiff's reference to the "ADAA" appears to have caused confusion at the EEOC, which subsequently sent a Notice of Charge of Discrimination to the University stating that Plaintiff had filed her charge under the Age Discrimination in Employment Act (or ADEA), alleging age discrimination.  (Notice of Charge of Discrimination, Dkt. 25-7, at ECF 2.)  Notwithstanding the EEOC's characterization of Plaintiff's Charge of Discrimination, Plaintiff had only marked boxes on the EEOC's complaint form alleging discrimination based on sex and disability.  (*See* EEOC Charge of Discrimination, Dkt. 25-7, at ECF 3.)  Because Plaintiff's ADA claims are reasonably related to the allegations made in her Charge of Discrimination, the Court may still consider those claims.  *See Equal Opportunity Emp't Comm. V. Bloomberg L.P.*, 751 F. Supp. 2d 628, 633 (S.D.N.Y. 2010).

[6] This case was originally assigned to the Honorable Joan M. Azrack.  (*See* February 1, 2017 Order, Dkt. 4.)

without prejudice to renew and referred this case to the Court Annexed Mediation Advocacy Program.  (*See* Order dated June 13, 2018.)  The parties attended a mediation session on December 10, 2018 (*see* Selection of Mediator, Dkt. 31), but mediation was unsuccessful (*see* December 13, 2018 Report of Mediation Unsettled).  In light of the failure of mediation, Defendants renewed their motion to dismiss on December 12, 2018.  (Defendants' Renewed Motion to Dismiss, Dkt. 32.)  On March 22, 2019, this case was reassigned from Judge Azrack to the undersigned.  (*See* Order dated March 22, 2018.)

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted); *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 188 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts[,] or legal conclusions . . . presented as factual allegations," *In re Livent, Inc.*

*Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).    Additionally, a court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* at 405–06 (citing *Hirsch v. Arthur Andersen & Co*., 72 F.3d 1085, 1095 (2d Cir.1995)).

At the pleadings stage, a court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to [the] plaintiff's claims and were relied upon in drafting the complaint." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 404 (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 44 (2d Cir. 1991)). Thus, in employment discrimination cases, courts may consider filings with state administrative agencies or the EEOC to the extent that a complaint necessarily rests upon them. *See Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) ("'[I]t is proper for this court to consider the plaintiff's relevant filings with the EEOC' and other documents related to the plaintiff's claim . . . so long as those filings are . . . 'integral to' and 'solely relied' upon by the complaint." (brackets omitted) (quoting *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d. Cir. 2006))).

## DISCUSSION

Plaintiff's SAC asserts the following claims: (1) interference and retaliation in violation of the FMLA; (2) discrimination, hostile work environment, and retaliation in violation of the ADA and Rehabilitation Act; (3) due process violations under § 1983; and (4) discrimination, hostile work environment, and retaliation in violation of the NYSHRL.  (*See* SAC, Dkt. 15, at 3.)  Each of Plaintiff's claims are asserted against the Individual Defendants in both their official and individual capacities, as well as against the University and New York State.  (*Id.* at 1.)  Defendants

move to dismiss all of Plaintiff's claims.  (*See generally* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Complaint ("Defs.' Br."), Dkt. 25-9.)

## I.     Eleventh Amendment Sovereign Immunity[7]

The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  "Although not clear from the terms of the [Eleventh] [A]mendment, the Supreme Court has interpreted this language to bar suit against a state by its own citizens."  *Islander E. Pipeline Co., LLC. v. Conn. Dep't of Envt'l Prot.*, 482 F.3d 79, 88–89 (2d Cir. 2006); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).  New York's sovereign immunity extends to the State University of New York system, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), as well as, under most circumstances, to state officials sued in their official capacities, *see Stinson v. City Univ. of N.Y.*, No. 17-CV-3949 (KBF), 2018 WL 2727886, at *5 (citing *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 82 (2d Cir. 2004); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984)).  Accordingly, absent an express waiver of sovereign immunity or a clear abrogation of that immunity by Congress, the Eleventh Amendment generally bars Plaintiff from suing New York State, the University, and state officials, such as Gergen and Johnson, when

---

[7] Whether a state's sovereign immunity under the Eleventh Amendment presents a question of subject matter jurisdiction is an open question in the Supreme Court and the Second Circuit. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998); *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) (leaving open "whether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense").  In light of this uncertainty, the Court first addresses the sovereign immunity defenses raised by Defendants.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("[S]ubject-matter jurisdiction necessarily precedes a ruling on the merits.").

sued in their official capacities, in federal court for legal and equitable relief.  *See Davis v. Proud*, 2 F. Supp. 3d 460, 476–77 (E.D.N.Y. 2014).

### A.    Claims Against New York State and the University

In enacting § 504 [of the Rehabilitation Act], Congress expressed its clear intent "to condition [a state's] acceptance of federal funds on [the] state's waiver of its Eleventh Amendment immunity."  *Garcia v. State Univ. of N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001); *see also* 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act . . . .").  Courts in this Circuit have held that New York State's continued receipt of federal funds under § 504 after the Second Circuit's decision in *Garcia* "constitutes a knowing waiver of sovereign immunity."  *Gentleman v. State Univ. of N.Y.—Stony Brook*, No. 16-CV-02012 (ADS) (AKT), 2016 WL 6892151, at *5 (E.D.N.Y. Nov. 21, 2016) (quoting *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 331 (E.D.N.Y. 2014)).  Thus, Plaintiff may assert her claims under the Rehabilitation Act against New York State and the University.[8]

By contrast, Supreme Court and Second Circuit precedent make clear that Congress has not abrogated state sovereign immunity by enacting the "self-care" provision[9] of the FMLA, Title

---

[8] Since Plaintiff is able to assert her Rehabilitation Act claims against New York State and the University, there is no need for Plaintiff to also assert these claims against individual Defendants in their official capacities.  *See Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 200 (S.D.N.Y. 2000) ("Because plaintiff is able to assert [her] . . . Rehabilitation Act claims against [the state entities] directly, I find that there is no justification for allowing plaintiff to also assert . . . Rehabilitation Act claims against individual defendants in their official capacities."); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003) ("The real party in interest in an official-capacity suit is the government entity.").  Accordingly, Plaintiff's Rehabilitation Act claims against Defendants Gergen and Johnson in their official capacities are dismissed.

[9] In *Coleman*, the Supreme Court distinguished the "family-care provisions" of the FMLA, *see* 29 U.S.C. § 2612(a)(1)(A)–(C), from the "self-care provision," *see* 29 U.S.C. § 2612(a)(1)(D).  *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 34 (2012).  Pursuant to the self-care

I of the ADA, or Section 1983.  *See Coleman*, 566 U.S. at 37 ("Standing alone, the self-care provision [of the FMLA] is not a valid abrogation of the States' immunity from suit."); *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001) (holding that Congress did not abrogate the states' sovereign immunity against employment discrimination claims arising under Title I[10] of the ADA).  Neither has New York State waived its Eleventh Amendment immunity and consented to suit in federal court under the NYSHRL.  *See Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 537–38 (S.D.N.Y. 2014).  Accordingly, Plaintiff's claims under the FMLA, ADA, and NYSHRL must be dismissed as to New York State and the University.[11]

### B.    Official Capacity Claims Against Individual Defendants

The same analysis does not necessarily apply to Plaintiff's claims against Individual Defendants in their official capacities, however, as the Supreme Court has created an exception to state sovereign immunity for the purpose of such suits.  Under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law."  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotations and

---

provision, an employee may take FMLA leave for "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).

[10] Plaintiff's claims cannot be construed as being brought pursuant to Title II of the ADA, as Title II does not cover employment discrimination claims.  *See Mary Jo C. v. N.Y. State and Local Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013) (stating that the ADA "unambiguously limits employment discrimination claims to Title I" and that a "public employee may not bring a Title II claim against his or her employer").

[11] The Court notes that Plaintiff's § 1983 claims would likewise be barred by sovereign immunity, *see Dube*, 900 F.2d at 594 ("[I]t is well settled that 42 U.S.C. § 1983 does not constitute an exercise of [Congress's] authority [to abrogate sovereign immunity].").  However, as discussed *infra*, the Court dismisses Plaintiff's § 1983 claims as abandoned.

citation omitted).  The *Ex parte Young* exception "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted).  Before applying this exception, however, a court is "specifically required . . . to examine whether there exists an ongoing violation of federal law."  *Pierre v. N.Y. State Dep't of Corr. Servs.*, No. 05-CV-00275 (RJS), 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (internal quotations and citation omitted).  Where a plaintiff alleges "only discrete acts of past discrimination and retaliation," merely characterizing the request for relief as prospective will not suffice to invoke the *Ex parte Young* doctrine.  *Id.* (internal quotations and citation omitted).

In light of these standards, Plaintiff's claims against Individual Defendants in their official capacities for interference and discrimination under the FMLA and ADA must be dismissed, as these claims rest solely on past acts that have been completed.  (*See* SAC, Dkt. 15, ¶¶ 12–17, 29–44.)  Likewise, Plaintiff's claims against Individual Defendants in their official capacities under the NYSHRL fail because "a federal court's grant of injunctive relief against a state official may *not* be based on violations of state law."  *Dube*, 900 F.2d at 595.

However, the Court considers whether Plaintiff may assert claims for prospective injunctive relief against Defendants Gergen and Johnson in their official capacities with respect to her claims of retaliation and hostile work environment under the FMLA and ADA.  Plaintiff continues to be employed by Defendants, and she alleges multiple times in her Second Amended Complaint that there is "an ongoing effort to harass and retaliate against [her]."  (SAC, Dkt. 15, at 16, ¶¶ 59, 69.)  Liberally construed, the Second Amended Complaint also alleges that Defendant Gergen has taken actions since this case began that could constitute retaliation against Plaintiff for

filing this case.  (*See id.* ¶¶ 70, 74 (alleging that Gergen became interested in Plaintiff's 2017 performance evaluation only after she filed this action and subsequently made negative edits to her performance evaluation); *id.* ¶ 66 (stating that Plaintiff became aware in January 2017, the same month in which she filed this action, that Gergen denied her a discretionary bonus).)  Plaintiff also alleges that "[i]t is clear that Mr. Gergen will continue to harass, intimidate[,] and retaliate against [her,] . . . continue to prevent [her] from advancing in [her] career[,] . . . [and] do irreparable harm to [her] reputation, current career, and chances of advancement elsewhere in the University." (*Id.* ¶ 76.)  As relief, Plaintiff seeks an injunction "preventing defendant[12] from engaging in any harassing and/or retaliatory activities" and assigning all responsibilities related to Plaintiff's job to her current immediate supervisor for the remainder of Gergen's tenure as Director of the Undergraduate Biology program.  (*Id.* ¶¶ 75–76.)  Such relief is properly characterized as prospective and may be sought against Individual Defendants in their official capacities pursuant to *Ex parte Young* if it would remedy the ongoing violations under any FMLA or ADA claim that Plaintiff sufficiently alleges.  *See State Emps. Bargaining Agent Coalition*, 494 F.3d at 98 ("The prohibition against retaliation sought by plaintiffs . . . would prevent this alleged ongoing injury from occurring again in the future.  Thus, sovereign immunity does not bar the . . . forms of injunctive relief sought by plaintiffs.").

\*     \*     \*

In light of the foregoing analysis, Plaintiff may assert her Rehabilitation Act claims for discrimination, hostile work environment, and retaliation against New York State and the University.  She may also assert her FMLA retaliation, ADA hostile work environment, and ADA

---

[12] Plaintiff's use of the singular term "defendant" is ambiguous, but for the purposes of its sovereign immunity analysis, the Court liberally construes Plaintiff's Second Amended Complaint to seek prospective injunctive relief as to both of the Individual Defendants.

retaliation claims against Individual Defendants in their official capacities to the extent that she seeks prospective injunctive relief. Having addressed this threshold issue, the Court now considers the substantive sufficiency of Plaintiff's validly asserted claims.

## II.   Claims Under the FMLA

"The FMLA provides generally that a covered employer is required to grant an eligible employee up to a total of 12 weeks['] leave during any 12-month period for personal or family needs indicated in the Act."[13] *Coutard v. Mun. Credit Union*, 848 F.3d 102, 108 (2d Cir. 2017) (citing 29 U.S.C. § 2612(a)). Eligible employees are statutorily entitled to 12 work-weeks of leave during any 12-month period for, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

In order to ensure that eligible employees are not deprived of their statutory rights, the FMLA makes it unlawful for an employer (1) "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" established by the FMLA, or (2) "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a). Therefore, employers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions[,] or disciplinary actions." 29 C.F.R. § 825.220(c). Employers are also prohibited from discriminating against any employee for filing any charge or instituting any proceeding under or related to the FMLA. *See* 29 U.S.C. § 2615(b)(1). In the Second Circuit, these prohibitions give rise to two distinct types of FMLA

---

[13] For purposes of the FMLA, a covered employer is "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). As relevant here, an eligible employee is an employee who has been employed "for at least 12 months by the employer . . . and for at least 1,250 hours of service with [that] employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). The parties do not dispute that the University was a covered employer and Plaintiff was an eligible employee during the time period relevant to this action.

claims: interference claims and retaliation claims. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). Plaintiff has asserted both types of FMLA claims in this case. (*See* SAC, Dkt. 15, at 3.) In light of the Court's sovereign immunity analysis, *supra*, Plaintiff may assert her FMLA retaliation claim against Individual Defendants in their official capacities.[14] Plaintiff may also assert both FMLA claims against Individual Defendants in their individual capacities.[15]

### A.   Statute of Limitations

The standard statute of limitations for interference and retaliation claims under the FMLA is two years. *See* 29 U.S.C. § 2617(c)(1) ("[A]n action may be brought under this section not later than [two] years after the date of the last event constituting the alleged violation for which the action is brought."). A three-year statute of limitations applies, however, if a plaintiff alleges "willful" violations of the FMLA. *See id.* § 2617(c)(2) ("In the case of such action brought for a willful violation of [§ 2615], such action may be brought within [three] years of the date of the last event constituting the alleged violation for which such action is brought."). An FMLA violation

---

[14] As stated *supra*, Plaintiff's FMLA retaliation claim against the Individual Defendants in their official capacities is limited to the extent that Plaintiff seeks prospective injunctive relief.

[15] The Court notes that "an individual can face personal liability under the FMLA under certain circumstances." *Diby v. Kepco Inc.*, No. 16-CV-00583 (KAM) (LB), 2016 WL 5879595, at *3 (E.D.N.Y. Oct. 7, 2016). "Personal liability under the FMLA is appropriately only if the individual defendant is an 'employer' within the definition of the statute." *Id.* (citing *Graziadio v. Culinary Inst. Of Am.*, 817 F.3d 415, 422 (2d Cir. 2016)). The Second Circuit applies the "economic-reality test," used in Fair Labor Standards Act cases, to determine whether an individual is an employer under the FMLA. *Graziadio*, 817 F.3d at 422. "In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking essentially whether the putative employer controlled in whole or in part plaintiff's rights under the FMLA." *Id.* at 423 (internal quotations and citation omitted). Defendants do not argue that Individual Defendants cannot be held individually liable under the FMLA (*see* Defs.' Br., Dkt. 25-9, at 7–8, 16–21), and the Court finds that Plaintiff has sufficiently alleged that Defendants controlled her rights under the FMLA for the Court to entertain individual liability claims against Gergen and Johnson. *See Ziccarelli v. N.Y. Univ. Hosps. Ctr.*, 247 F. Supp. 3d 438, 446 (S.D.N.Y. 2017) ("[T]o survive a motion to dismiss, [the p]laintiff . . . must simply plead that the proposed [individual defendant employers] had substantial control over the aspects of employment alleged to have been violated." (internal quotation and citation omitted)).

is willful if an employer either "knew or showed reckless disregard" for whether its conduct violated the FMLA. *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (per curiam). However, if an employer acted reasonably, or "unreasonably[] but not recklessly[,] in determining its legal obligation," then the alleged violations should not be considered willful. *Mejia v. Roma Cleaning, Inc.*, 751 F. App'x 134, 136 (2d Cir. 2018) (summary order) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

With respect to Plaintiff's interference claims, the two-year statute of limitations must apply. Plaintiff alleges that all of her requests for FMLA leave prior to April 3, 2013 were granted. (SAC, Dkt. 15, ¶ 5.) In April 2013, the one occasion on which Plaintiff submitted an FMLA leave request that was subsequently denied, Johnson allegedly denied Plaintiff's request based on a lack of appropriate supporting documentation. (*See id.* ¶¶ 14–18.) Because the University may require any request for FMLA leave to be supported with documentation from a doctor, *see* 29 U.S.C. § 2613(a) ("An employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee . . . ."), this isolated denial of FMLA leave for lack of appropriate documentation does not rise to the level of a willful violation of the FMLA. Thus, the standard two-year statute of limitations is applicable to Plaintiff's FMLA interference claims. This means that Plaintiff's FMLA interference claims may only be based on allegations of interference that occurred after January 26, 2015.

As to Plaintiff's FMLA retaliation claims, however, the three-year statute of limitations should apply. In a recent summary order, the Second Circuit stated that "retaliating against an employee for exercising FMLA rights is almost by definition a 'willful' violation." *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 54 n.2 (2d Cir. 2017) (summary order). Though this non-precedential decision does not definitively resolve the issue, the three-year statute of limitations is appropriate

in this case.  Accepting Plaintiff's allegations as true for purposes of this motion to dismiss, Individual Defendants exhibited reckless disregard for their obligation to refrain from retaliating against Plaintiff for requesting FMLA leave and opposing practices that violate the FMLA.  On multiple occasions, Plaintiff exercised her rights to request FMLA benefits and to oppose practices that she believed violated the FMLA.  (*See* SAC, Dkt. 15, ¶ 12, ECF 23–24.)   Nonetheless, Individual Defendants allegedly retaliated against Plaintiff for these actions by falsely accusing her of forging her medical certification, altering her job responsibilities, denying her a promotion, denying her a discretionary bonus, and negatively altering her performance evaluations in June 2016 and June 2017.  (*See id.* ¶¶ 14, 37, 44–57, 59, 66–70.)  Because these actions, if taken under circumstances giving rise to an inference of retaliation, would exhibit reckless disregard of their obligations under the FMLA, the Court finds that the FMLA's three-year statute of limitations applies.  Thus, Plaintiff's FMLA retaliation claims against Individual Defendants that are based on acts that occurred after January 26, 2014 are timely.[16]

### B.   Interference Claims

In the Second Circuit, a plaintiff must plead the following elements to state a claim of interference under the FMLA: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA."  *Graziadio*, 817 F.3d at 424.  Defendants do not dispute that Plaintiff is an eligible employee under the FMLA or that she was entitled to take leave, as she alleges, under the FMLA.  Furthermore, Plaintiff's allegations

---

[16] The continuing violations doctrine does not apply to FMLA claims, so the Court will not consider any allegations before this date.  *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 463 n.14 (S.D.N.Y. 2011); *see also Dansby v. City of New York*, No. 16-CV-00327 (KBF), 2016 WL 9307473, at *6 (S.D.N.Y. Aug. 3, 2016).

establish that Individual Defendants are her employers within the meaning of the FMLA. *See Ziccarelli*, 247 F. Supp. 3d at 446. Nevertheless, Plaintiff's FMLA interference claims fail on the fourth and fifth prongs.

To establish the fourth element of an FMLA interference claim, an employee need not give "formal notice" that she intends to take FMLA leave, but she "must objectively assert" her rights under the FMLA. *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 535–36 (S.D.N.Y. 2009); *see also Avila–Blum v. Casa de Cambio Delgado, Inc.*, 519 F. Supp. 2d 423, 429 (S.D.N.Y. 2007) ("[M]erely calling in sick is insufficient to put a company on notice that an employee is requesting leave that may be eligible under the FMLA. . . . The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." (alterations and quotations omitted)). The fifth element, *i.e.*, that the employee was denied FMLA leave, may be satisfied either by a formal denial or via a "discouragement theory" of denial. Under this theory, a plaintiff is denied benefits under the FMLA if the plaintiff "tried to assert her FMLA rights and was thereafter discouraged from taking FMLA leave." *Reilly*, 620 F. Supp. 3d at 535. Indeed, a plaintiff may plausibly allege the fourth *and* fifth elements of an interference claim if her allegations establish that "the employer's purported acts of discouragement would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise . . . her FMLA rights." *Id.* at 535 (citing *Golden v. N.Y.C. Dep't of Envt'l Prot.*, No. 06-CV-01587 (DLC), 2007 WL 4258241, at *3 (S.D.N.Y. Dec. 3, 2007)); *see also Santiago v. Dep't of Transp.*, 50 F. Supp. 3d 136, 144 (D. Conn. 2014).

Here, there is no allegation that Plaintiff asserted a right to FMLA leave after January 26, 2015, or even that Individual Defendants denied Plaintiff FMLA benefits after tfhat date. Plaintiff does allege, however, that her doctor prepared documentation for an FMLA leave request on

February 11, 2015 that she never submitted.  (SAC, Dkt. 15, ¶¶ 25–26.)  Plaintiff states that she

did not submit the form because she feared "the retaliation and harassment that [she] was subjected

to when [she] submitted the previous [FMLA leave request] form in March[] 2013."  (*Id.* ¶ 26.)

Plaintiff further alleges that she continues to fear requesting FMLA leave.  (*Id.* ¶ 28.)

Though Plaintiff's allegations establish that she has been discouraged from attempting to

exercise rights granted to her by the FMLA, they do not plausibly establish that "a similarly

situated employee of ordinary resolve" would be discouraged from doing so.  *Reilly*, 620 F. Supp.

2d at 535.  Though Plaintiff's March 2013 FMLA leave request was initially denied, the denial

email explained the reason for denial, which allowed Plaintiff to return to her doctor to properly

prepare her request.  (*See* SAC, Dkt. 15, ¶¶ 14–17; Pl.'s Opp., Dkt. 26, at 12–13.)  Once Plaintiff

resubmitted her request, it was granted.  (SAC, Dkt. 15, ¶¶ 17–18; Pl.'s Opp., Dkt. 26, at 13.)

Furthermore, almost two years pass between the initial denial of Plaintiff's March 2013 FMLA

leave request and February 2015, when Plaintiff alleges that she continued to fear requesting

FMLA leave.  (SAC, Dkt. 15, ¶ 26–28.)  Under the circumstances alleged in the Second Amended

Complaint, Plaintiff's failure to "objectively assert" her rights under the FMLA within the statute

of limitations cannot be excused under the "interference by discouragement" theory.  Accordingly,

Plaintiff's FMLA interference claims against Individual Defendants based on conduct occurring

after January 26, 2015 are dismissed.

### C.   Retaliation Claims

A plaintiff may bring FMLA retaliation claims for violations of both 29 U.S.C.

§ 2615(a)(1) and 29 U.S.C. § 2615(a)(2).  *See Woods v. START Treatment & Recovery Ctrs., Inc.*,

864 F.3d 158, 167 (2d Cir. 2017); *see also* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any

employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right

provided under [the FMLA]."); 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to

discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA].").  FMLA retaliation claims are analyzed under the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Graziadio*, 817 F.3d at 429.  Accordingly, "[t]o establish a *prima facia* case of FMLA retaliation, a plaintiff must establish that (1) [s]he exercised rights protected under the FMLA; (2) [s]he was qualified for [her] position; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (internal quotations and citations omitted).

"For purposes of FMLA retaliation claims, an adverse employment action is 'any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising h[er] legal rights.'"  *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 512 (E.D.N.Y. 2018) (quoting *Millea v. Metro–N. R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011) (alteration in original).  "'[P]etty slights, minor annoyances, and simple lack of good manners will not' give rise to actionable retaliation claims."  *Millea*, 658 F.3d at 165 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).[17]  "In determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable."  *Smith*, 286 F. Supp. 3d at 512 (quoting *Hicks v. Baines,* 593 F.3d 159, 165 (2d Cir. 2010)).  "[T]he standard for an adverse employment action in retaliation claims is

---

[17] "In *Millea v. Metro–N. R. Co.*, 658 F.3d 154 (2d Cir. 2011), the Second Circuit adopted the Title VII adverse employment standard for retaliation claims for FMLA retaliation claims. Therefore, the Court may rely on Title VII retaliation cases in analyzing adverse employment actions in the FMLA retaliation context."  *Smith*, 286 F. Supp. 3d at 512 n.7 (E.D.N.Y. 2018).

considerably broader than the standard for discrimination claims under Title VII." *Vaughn v. City of New York*, No. 06-CV-6547 (ILG), 2010 WL 2076926, at \*14 (E.D.N.Y. May 24, 2010) (citing *Burlington N. and Santa Fe Ry. Co.*, 548 U.S. 53).

As to the fourth element, a plaintiff in the Second Circuit can raise an inference of retaliatory intent "by showing that the protected activity was closely followed in time by the adverse employment action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (internal brackets omitted). There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference. *See Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503–04 (S.D.N.Y. 2010) (collecting cases).

Here, there is no dispute that Plaintiff is qualified for the position that she holds. Further, when Plaintiff filed this action on January 26, 2017, she was exercising her rights under the FMLA to oppose practices that she believed were prohibited. *See* 29 U.S.C. § 2615(b)(1). Accordingly, Plaintiff has established the first two elements of her FMLA retaliation claim for the purposes of the instant motion. Plaintiff has also satisfied the third element by alleging that Individual Defendants denied her a promotion on June 17, 2015, that Defendant Gergen denied her request for a discretionary salary increase on October 23, 2015, and that around January 2017, Defendant Gergen declined to give Plaintiff a discretionary bonus. (SAC, Dkt. 15, ¶¶ 31, 52, 66); *see Jacobson v. Capital One Financial Corp.*, No. 16-CV-06169 (CM), 2018 WL 6817064, at \*32 (S.D.N.Y. Dec. 12, 2018) (noting that "a reduced bonus and raise" and "failure to receive a promotion" constituted adverse employment actions); *cf. Fahmy v. Duane Reade, Inc.*, No. 04-CIV.-01798(DLC), 2006 WL 1582084, at \*10 (S.D.N.Y. June 9, 2006) (noting that "there is no

24

dispute that the denial of a bonus, [or] the denial of a promotion . . . constitute adverse employment actions" for a Title VII discrimination claim).

The Court finds, however, that Plaintiff has only plausibly alleged that Gergen's decision to deny her a discretionary bonus around January 2017 occurred under circumstances giving rise to a reasonable inference of retaliatory intent. Though the actual date of this denial is unclear, the Court liberally construes the complaint to allege that this denial occurred shortly after Plaintiff filed her initial complaint in this action on January 26, 2017.[18] This "very close" temporal proximity alone is enough to allow Plaintiff to overcome Defendants' motion to dismiss. *See Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2013) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Because the other adverse employment actions that Plaintiff experienced were taken well over three months after Plaintiff engaged in any protected activity and there are no allegations of disparaging remarks or other contemporaneous indications of retaliatory intent, Plaintiff's retaliation claim cannot rest on those incidents. *See Hagan v. City of New York*, 39 F. Supp. 3d 481, 503 (S.D.N.Y. 2014).

Therefore, Plaintiff's FMLA retaliation claim can proceed based on Gergen's decision to deny Plaintiff a discretionary bonus in January 2017. However, because this denial is a "discrete act" rather than an "ongoing violation," *Pierre*, 2009 WL 1583475, at *18 (internal quotations and citation omitted), this claim will only proceed against Defendant Gergen in his individual capacity. Further, Defendant Johnson is not alleged to have been involved in the denial of the discretionary bonus in January 2017, so Plaintiff's retaliation claim against her must be dismissed. *Cf. Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 315 (S.D.N.Y. 2014) (denying a motion to dismiss

---

[18] It is notable on this point that Plaintiff did not allege in her initial complaint that she was denied a discretionary bonus (*see generally* Complaint, Dkt. 1); rather, this allegation first appeared in Plaintiff's (First) Amended Complaint (*see* Amended Complaint, Dkt. 7, ¶ 66).

FMLA claims where the second amended complaint alleged personal involvement in the decision to fire the plaintiff).

## III.    Claims Under the ADA and Rehabilitation Act

Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Similarly, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  Claims of disability discrimination brought pursuant to Title I of the ADA and the Rehabilitation Act are analyzed under the same standards.[19]  *See* 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 . . . ."); *see also Wright v. N.Y. State Dep't of Corr*., 831 F.3d 64, 72 (2d Cir. 2016).  Accordingly, when claims are brought together under the ADA and Rehabilitation Act, the elements of the claims "may be treated identically."  *Hilton v. Wright*, 673 F.3d 120, 128 n.7 (2d Cir. 2012).

In light of the Court's sovereign immunity analysis *supra*, Plaintiff has validly asserted claims of discrimination, hostile work environment, and retaliation under the Rehabilitation Act against the University and New York State.  Plaintiff has also asserted valid claims for prospective

---

[19] Notably, the Second Circuit recently held that, despite the statutes' seemingly different language, "the Rehabilitation Act incorporates the ADA's causation standard for employment discrimination claims."  *Natofsky v. City of New York*, 921 F.3d 337, 346 (2d Cir. 2019); *see also id.* at 349 ("[T]he ADA requires a but-for causation standard.").

injunctive relief against Individual Defendants in their official capacities for hostile work environment and retaliation in violation of the ADA.[20]

### A.      Statutes of Limitations

A plaintiff asserting a claim under the ADA must bring a complaint of workplace discrimination to the EEOC within 300 days of an incident's occurrence, and then file a related lawsuit within 90 days of receiving a notice of right to sue from the EEOC.  *See Bowens v. Corr. Ass'n of New York*, No. 19-CV-1523 (PKC) (CLP), 2019 WL 1586857, at *5 (E.D.N.Y. Apr. 12, 2019); *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011).  This filing period operates as a statute of limitations, so the failure to file a timely administrative complaint will bar a plaintiff's claims.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred.").  In this case, Plaintiff filed her first administrative complaint with the NYSDHR on November 14, 2013, but she failed to file a lawsuit after receiving a Notice of Right to Sue letter from the EEOC.  (Pl.'s Opp., Dkt. 26, at 5).  Accordingly, Plaintiff cannot base a cause of action on any allegations contained in her NYSDHR complaint.  Subsequently, however, Plaintiff filed a second administrative charge on July 23, 2015,

---

[20] "[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."  *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *see also Fox v. State University of New York*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) (noting that there is no individual liability under Title 1 of the ADA).  Therefore, the Court only considers ADA claims against Individual Defendants in their official capacities as allowed by *Ex Parte Young*, and dismisses Plaintiff's ADA claims against the individual Defendants in their individual capacities.  The Court has already dismissed Plaintiff's Rehabilitation Act claims against Individual Defendants in their official capacities, *see supra*, and now dismisses those claims against Individual Defendants in their individual capacities as well.

this time with the EEOC.  (SAC, Dkt. 15, at ¶ 4.)  Plaintiff timely filed this action after receiving

a right-to-sue letter from the EEOC.  (*Id*.)  Accordingly, Plaintiff's ADA claims may be based

upon alleged violations that occurred after September 26, 2014 and were contained in her EEOC

charge of discrimination.

Unlike the ADA, the Rehabilitation Act does not contain a specific statute of limitations.

*Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992).  In the absence of an express statute of

limitations, the Second Circuit has held "that actions under § 504 of the Rehabilitation Act are

governed by the state statute of limitations applicable to personal injury actions."  *Id.* at 127.  In

New York, the statute of limitations for personal injury actions is three years.  *See Pearl v. City of

Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *see also* N.Y. C.P.L.R. § 214(5).  Thus, Plaintiff may

only assert her claims under the Rehabilitation Act as to Defendants' actions after January 26,

2014.

## B.   Disability Discrimination in Violation of the Rehabilitation Act

To state a *prima facie* claim of employment discrimination under the Rehabilitation Act, a

plaintiff must plausibly allege: "(1) that [s]he is an individual with a disability within the meaning

of the statute, (2) that [s]he was otherwise qualified for the position or benefit denied, and (3) that

[s]he suffered an adverse employment action because of his disability; and (4) the program

sponsoring [her] position receives federal funding."  *Day v. MTA N.Y.C. Transit Auth.*, No. 17-

CV-07270 (VSB), 2019 WL 1437616, at *4 (S.D.N.Y. Mar. 31, 2019).  Defendants move to

dismiss this claim on the grounds that Plaintiff's allegations fail to establish that she suffered an

adverse employment action because of her disability.  (*See* Defs.' Br., Dkt. 25-9, at 11–16.)

As an initial matter, there is no dispute that Plaintiff has adequately alleged that she suffered

from a disability, *i.e.*, Crohn's disease.  Plaintiff further claims that the denial of her March 2013

FMLA leave request establishes that Defendants failed to provide a reasonable accommodation

28

for her disability.  However, this act falls outside of the statute of limitations for Rehabilitation Act claims.  Thus, Plaintiff cannot state a claim to relief on that basis.  Further, though Plaintiff has alleged that she suffered adverse employment actions on three discrete occasions (SAC, Dkt. 15, at ¶¶ 31, 52, 66), none of her allegations plausibly connect those actions to discriminatory animus based on her disability.  And while Plaintiff alleges that, on multiple occasions between 2011 and 2013, Gergen expressed his general displeasure with employees who took FMLA leave (*id.* ¶¶ 6–8), these allegations are insufficient to infer a causal connection between the changes to Plaintiff's job responsibilities and her disability.  *See Falcon v. City Univ. of N.Y.*, 263 F. Supp. 3d 416, 430–31 (E.D.N.Y. 2017) ("The fact that the [p]laintiff may be a member of a [protected] group and something happens to her that she does not like is not nearly sufficient to constitute an employment discrimination claim." (internal quotations, brackets, and citation omitted)).  There are no indications that the Defendants disparaged, criticized, or otherwise made derogatory comments related to Plaintiff's disability after 2013.  *See Hagan v. City of New York*, 39 F. Supp. 3d 481, 503 (S.D.N.Y. 2014).  Finally, there are no allegations that Defendants gave more favorable treatment to similarly situated employees who are not disabled.  Accordingly, Plaintiff's discrimination claims under the Rehabilitation Act must be dismissed.

### C.    Hostile Work Environment in Violation of the Rehabilitation Act and the ADA

While other claims of discrimination address discrete harms such as hiring or discharge, a hostile work environment claim requires a court to "analy[ze] a workplace environment as a whole to discover whether it is 'abusive.'" *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001) (quoting *Harris v. Forklift*, 510 U.S. 17, 22 (1993)).  To state a hostile work environment claim under both acts, a plaintiff must allege she suffered conduct that "(1) is objectively severe or pervasive; (2) creates an environment that the plaintiff . . . subjectively perceives as hostile or abusive; and (3)

creates such an environment because of the plaintiff's [disability]." *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 299 (S.D.N.Y. 2014) (internal quotations and citation omitted).  Isolated incidents or "episodic" stray remarks are not "sufficiently continuous and concerted in order to be deemed pervasive." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (citation and quotation mark omitted).

Plaintiff's hostile work environment claims fail on the third element for the same reason that her discrimination claims fail: the allegations in the Second Amended Complaint simply do not suggest that Defendants' conduct is reasonably attributable to her disability.[21]  While Gergen allegedly yelled at Plaintiff (SAC, Dkt. 15, at ¶ 21), asked for her resignation (*id.*), gave her additional work responsibilities on at least nine occasions between 2012 and 2016 (*id.* ¶¶ 11, 19, 45–65), and "manipulated" the University's hiring committee to ensure that Nancy Black was selected as Assistant Director of Undergraduate Biology instead of Plaintiff (*id.* ¶¶ 32, 37), there are no indications, such as contemporaneous disparaging remarks, that these actions were taken *because of* Plaintiff's disability.  *See Raniola*, 243 F.3d at 621–22 ("To demonstrate that all of the alleged abuse was on account of [a protected characteristic], [a plaintiff] may either show that the . . . verbal abuse indicated that other adverse treatment was also suffered on account of [the protected characteristic], or resort to circumstantial proof that the other adverse treatment that was not explicitly [based on the protected characteristic] was, nevertheless, suffered on account of [it].");  *see also Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be

---

[21] Even if Plaintiff could allege that Defendants' actions were taken because of her disability, the isolated events described in the Second Amended Complaint do not rise to the level of "severe or pervasive."  *Cf. Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (finding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her").

characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.").  Because Plaintiff has failed to allege facts that give rise to an inference that Defendants' allegedly hostile conduct was motivated by her disability, her hostile work environment claims under the ADA and Rehabilitation Act fail.

### D.    Retaliation in Violation of the Rehabilitation Act and the ADA

To state a *prima facie* case of retaliation under the ADA and the Rehabilitation Act, a plaintiff must allege that "(1) [the d]efendants took an adverse employment action against [her], (2) because [s]he opposed an employment practice made unlawful by the ADA or Rehabilitation Act." *Johnson v. N.Y. State Office of Alcoholism*, No. 16-CV-9769 (RJS), 2018 WL 1353258, at *4 (S.D.N.Y. Mar. 13, 2018); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (stating that retaliation claims under the Rehabilitation Act and ADA are governed by the same standards).

For substantially the same reasons that Plaintiff has successfully stated a plausible claim of FMLA retaliation, she has also stated a retaliation claim against the University and New York State under the Rehabilitation Act based on the allegation the she was denied a discretionary bonus. When Plaintiff filed this action in January 26, 2017, she was acting to oppose discrimination and retaliation made unlawful by both acts.  The temporal proximity between Plaintiff's filing this action and the denial of a discretionary bonus to Plaintiff in or around January 2017 is sufficient, at the pleadings stage, to raise an inference of retaliatory intent.  *See Walder*, 738 F. Supp. 2d at 503–04.

The Court also finds that Plaintiff may assert a claim of retaliation under the ADA against Gergen in his official capacity based on his denial of Plaintiff's August 2015 request for a salary

increase.[22]  Plaintiff filed her second administrative charge with the EEOC in July 2015.  (SAC, Dkt. 15, at 23.)  One month later, Plaintiff requested a salary increase in light of her increased job responsibilities.  (*Id.* ¶ 50.)  Gergen denied Plaintiff's request on October 23, 2015 and accused Plaintiff of wrongdoing and performance deficiencies.  (*Id.* ¶ 52.)  Liberally construed, these alleged adverse employment actions raise an inference of retaliatory intent.[23]  Accordingly, Plaintiff may pursue her ADA retaliation claims for injunctive relief against Gergen.[24]

Because Plaintiff failed to file an administrative charge of retaliation based on the bonus denial, however, she may not assert a claim of retaliation under the ADA against Individual Defendants in their official capacities.[25]  *Vives*, 2019 WL 1386738, at *6 ("Before bringing a federal claim under Title VII or the ADA, a plaintiff must first file a complaint with the EEOC or equivalent state agency."  (citing 42 U.S.C. § 2000e-5(e)(1))).

_____

[22] Because Defendant Johnson is not alleged to have been personally involved in any actions relevant to Plaintiff's retaliation claims under the ADA and Rehabilitation Act, those claims must be dismissed as to her.

[23] While Plaintiff did not file a supplement to her July 2015 EEOC charge and expressly exhaust her claim that Gergen retaliated against her for filing an EEOC charge of ADA discrimination, Plaintiff's ADA retaliation claim against him is reasonably related to that charge. Accordingly, she may still pursue her ADA retaliation claim in this Court.  *See Vives v. N.Y.C. Dep't of Corr.*, No. 15-CV-6127 (MKB), 2019 WL 1386738, at *7 (E.D.N.Y. Mar. 27, 2019) ("Claims not raised in an EEOC complaint may still be part of the complaint later filed in federal court if they are 'reasonably related' to the claim filed with the agency.  'Reasonably related' claims are recognized . . . [where] the claim is one of retaliation by an employer against an employee for filing an EEOC charge . . . ." (alterations and quotations omitted)).

[24] The Court finds that denial of the salary increase is an ongoing violation akin to a termination, and that Plaintiff's request for a salary relief qualifies as prospective injunctive relief because the relief, "if granted, would serve directly to end the alleged violation of federal law." *State Emps. Bargaining Agent Coalition*, 494 F.3d at 98.  Therefore, the Court concludes sovereign immunity does not bar this claim.

[25] As discussed *supra*, the remaining adverse employment actions alleged by Plaintiff did not occur under circumstances giving rise to an inference of retaliatory intent.  Accordingly, Plaintiff cannot maintain ADA or Rehabilitation Act retaliation claims based on those incidents.

## IV.   Claims Under the United States Constitution

In the Second Amended Complaint, Plaintiff asserts that she is bringing claims pursuant to "42 U.S.C. § 1983 and the 14th [Amendment] Due Process [C]lause to the Constitution (retaliation by SUNY)." (SAC, Dkt. 15, at 3.) Though Defendants have expressly moved to dismiss Plaintiff's claims under § 1983 (*see* Defs.' Br., Dkt. 25-9, at 23–24), Plaintiff's opposition brief does not mention this claim (*see* Pl.'s Opp., Dkt. 26, at 24–25). Because the Court has not independently identified a plausible claim of a constitutional violation in light of the facts alleged, the Court deems this claim abandoned as to all Defendants. *See Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (stating that a court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed").

## V.   State Law Claims

In addition to her viable federal claims, Plaintiff also asserts corresponding state law claims under the NYSHRL. (*See* SAC, Dkt. 15, at ECF 3.) In light of the Court's sovereign immunity analysis, *supra*, these state law claims are validly asserted only as to Individual Defendants in their individual capacities.

"The NYSHRL allows for individual liability under two theories: [(1)] if the defendant has 'an ownership interest' in the employer or has 'the authority to hire and fire employees,' [N.Y. Exec. Law § 296(1)], [or (2)] if the defendant aided and abetted the unlawful discriminatory acts of others, N.Y. Exec. Law § 296(6)." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521–22 (S.D.N.Y. 2015) (quotations and internal citations omitted). Thus, "a co-worker who 'actually participates in the conduct giving rise to a discrimination claim' [can] be held liable under the NYSHRL even [if] that co-worker lacked the authority to either hire or fire the plaintiff."[26]

---

[26] There is a division of authority on the question of whether an individual may be held liable under the NYSHRL as an aider and abettor of *their own* discriminatory conduct. *Compare*

*Feingold v. New*, 366 F.3d 138, 158 (2d Cir. 2004). Crucially, however, the liability of an employer must be established as a predicate to individual liability for aiding and abetting. *See Jain v. McGraw-Hill Cos.*, 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011) ("[T]he NYSHRL and NYCHRL require 'that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor.'" (quoting *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999))); *see also France v. Touro College*, No. 14-CV-4613 (NGG) (CLP), 2016 WL 1105400, at *9 (E.D.N.Y. Feb. 16, 2016) ("[I]ndividual liability under the NYSHRL cannot attach without corresponding liability for the employer enterprise."), *report and recommendation adopted*, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016).

Here, Plaintiff has expressly characterized the University as her employer. (*See* SAC, Dkt. 15, at ECF 3 (naming Plaintiff's place of employment as "Stony Brook University").) And though Individual Defendants hold authority over Plaintiff in the workplace, they clearly lack an ownership interest in the University, as well as the power to hire and fire Plaintiff. (*See id.* ¶ 32 (stating that Plaintiff has attained "permanent/tenured status"); *id.* ¶ 44 (describing a "hiring committee" and "State hiring practices").)[27] In light of these allegations, Plaintiff must first

---

*Johnson v. Cty. of Nassau*, 82 F. Supp. 3d 533, 539 (E.D.N.Y. 2015) ("[An] employee [held liable] under Section 296(6) is not aiding and abetting his own conduct *per se*, but rather aiding and abetting the employer's violation, based on [the employer's] condonation or approval of the employee's conduct.") *and Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 427 (E.D.N.Y. 2008) ("[The defendant] may be held liable for aiding and abetting allegedly unlawful discrimination by her employer even where her actions serve as the predicate for the employer's vicarious liability."), *with Bliss v. MXK Restaurant Corp.*, 220 F. Supp. 3d 419, 426 (S.D.N.Y. 2016) ("[A]s a matter of law as well as logic, 'an individual cannot aid or abet his or her own violation of the Human Rights Law.'" (quoting *Hardwick v. Auriemma*, 983 N.Y.S.2d 509, 513 (1st Dep't 2014))); *see also Canosa v. Ziff*, No. 18-CV-4115 (PAE), 2019 WL 498865, at *9 n.13 (S.D.N.Y. Jan. 28, 2019) (recognizing this division of authority). Because Plaintiff's NYSHRL claims fail on other grounds, the Court need not resolve this question.

[27] Although Plaintiff alleges that on one occasion, in September 2013, Gergen screamed at Plaintiff that he wanted her "resignation" (SAC, Dkt. 15, ¶ 21), this is not enough from which to

establish a viable claim of liability against the University under § 296(1) of the NYSHRL; only then could she assert claims against Individual Defendants under § 296(6) for aiding and abetting violations of the NYSHRL.  As discussed *supra*, however, Plaintiff cannot do so because the University and New York State are immune from NYSHRL suits under the Eleventh Amendment. Accordingly, Plaintiff's claims against Individual Defendants under the NYSHRL must be dismissed for failure to state a claim.[28]  *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015) ("Here, as [the p]laintiffs cannot state a claim against CUNY under [the] NYSHRL and NYCHRL because the claims are barred by the Eleventh Amendment, [the p]laintiffs also cannot state a claim against the Individual CUNY Defendants in their individual capacities as aiders and abettors.");  *see also Ren Yuan Deng v. N.Y. State Office of Mental Health*, No. 13-CV-6801 (ALC), 2015 WL 221046, at *5 (S.D.N.Y. Jan. 15, 2015) (dismissing a plaintiff's NYSHRL claim against individual defendants because she could not establish employer liability against the defendant in light of the Eleventh Amendment).

## CONCLUSION

For the reasons stated, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's claims against the University and New York State for retaliation in violation of the Rehabilitation Act, as well as her claim for prospective injunctive relief against Defendant Gergen in his official capacity for retaliation in violation of the ADA shall proceed to discovery.  Likewise,

---

plausibly infer that Gergen had the ability to hire or fire Plaintiff.  Indeed, if anything, it suggests that Gergen lacked that authority and could only obtain Plaintiff's departure by telling her to resign.

[28] Because Plaintiff's state law claims are dismissed in their entirety on these grounds, the Court need not decide whether and to what extent these claims would be limited or foreclosed by the doctrine of election of remedies.  *See Moodie v. Fed. Res. Bank of N.Y.*, 58 F.3d 879, 884 (2d Cir. 1995); *see also* N.Y. Exec. Law § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, . . . unless such person had filed a complaint [with the NYSDHR] or with any local commission on human rights . . . .").

Plaintiff's claim against Defendant Gergen in his individual capacity for retaliation in violation of the FMLA shall proceed.  All other claims are dismissed.  Given that no claims remain against Defendant Johnson, she is terminated as a party to this action.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 5, 2019
       Brooklyn, New York