UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DESIREE DE FIGUEROA,

                Plaintiff,

       - against -

NEW YORK STATE, STATE UNIVERSITY
OF NEW YORK AT STONY BROOK, and
JOHN PETER GERGEN, in his official and
individual capacities, Director, Undergraduate
Biology,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-436 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

      This is an employment discrimination case brought by Plaintiff Desiree De Figueroa against Defendants John Peter Gergen, the State University of New York at Stony Brook ("SUNY"), and New York State.  Plaintiff's remaining claims allege that she was retaliated against in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"), the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* (the "FMLA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "Rehabilitation Act").[1] Specifically, Plaintiff alleges that she was denied a request for a raise in October 2015 (the "2015 Raise") in retaliation for filing an Equal Employment Opportunity Commission ("EEOC")

---

[1] Plaintiff's Second Amended Complaint also included claims of discrimination under the FMLA, ADA, Rehabilitation Act, and New York State Human Rights Law, all of which were dismissed following a motion to dismiss by Defendants. *De Figueroa v. New York*, 403 F. Supp. 3d 133, 164 (E.D.N.Y. 2019).

complaint in July 2015, and denied a discretionary bonus for calendar year 2016 (the "2016 Bonus"), in retaliation for filing this lawsuit in January 2017.[2]

Before the Court is Defendants' motion for summary judgment as to all remaining claims. Because Plaintiff has not put forth sufficient admissible evidence to suggest that Defendants' legitimate, non-discriminatory reasons for denying her the 2015 Raise were pretextual, and because Plaintiff was denied the 2016 Bonus before filing this lawsuit, summary judgment is granted in Defendants' favor on all of Plaintiff's remaining claims and this case is dismissed.

## BACKGROUND

### I.  Factual Background[3]

Plaintiff has worked in SUNY's Undergraduate Biology program for over 20 years, and she has held the title of Curator-SL3 since approximately 2006.  (Second Amended Complaint ("SAC"), Dkt. 15, ¶ 3; Gergen Answer to SAC ("Gergen Answer"), Dkt. 45, ¶ 3; New York & SUNY Answer ("NY Answer"), Dkt. 46, ¶ 3.)  As a Curator-SL3, Plaintiff is responsible for, among other things, acquiring supplies and equipment for instructional facilities, preparing guidelines for instructional exercises, collecting and maintaining live materials, mentoring and

---

[2] Plaintiff's Second Amended Complaint alleged that she was denied the bonus "around January 2017," which led the Court to find, in denying Defendants' motion to dismiss this claim, that she had plausibly alleged circumstances giving rise to a reasonable inference of retaliatory intent relating to Plaintiff's initiation of this action on January 26, 2017.  *De Figueroa*, 403 F. Supp. 3d at 157–58 ("Though the actual date of [the denial of the discretionary bonus] is unclear, the Court liberally construes the complaint to alleged that this denial occurred shortly after Plaintiff filed her initial complaint in this action on January 26, 2017.").  However, as discussed below, discovery in this case has revealed that Plaintiff, in fact, was denied this bonus in 2016, *before* she filed this lawsuit.

[3] Because the facts relevant to Plaintiff's remaining claims are relatively discrete for a motion for summary judgment—and because the parties disagree on whether there is a genuine dispute as to almost all of them—the Court sets forth the few undisputed background facts in this section based on the Second Amended Complaint and Defendants' Answers.  The relatively few facts necessary to decide this motion are discussed in the Discussion section below.

training staff and students, supervising student assistants working in the undergraduate biology laboratories, and operating the labs when the Curator is absent.  (SAC, Dkt. 15, ¶ 3; Gergen Answer, Dkt. 45, ¶ 3; NY Answer, Dkt. 46, ¶ 3.)  Plaintiff was granted tenured status in 2008. (SAC, Dkt. 15, ¶ 3; Gergen Answer, Dkt. 45, ¶ 3; NY Answer, Dkt. 46, ¶ 3.)

In or around 1992, Plaintiff was diagnosed with Crohn's disease, a chronic inflammatory bowel disease that is characterized by inflammation of the gastrointestinal tract.  (*See* SAC, Dkt. 15, ¶ 5.)  Like many individuals suffering from Crohn's disease, Plaintiff experiences "flare-ups" every few months, which may last from one day up to a few weeks.  (*Id.*)  When Plaintiff experiences a flare-up, she is unable to work or engage in basic life activities.  (*Id.*)

## II.    Relevant Procedural History

Plaintiff initially sued Defendants and another SUNY employee for various actions that allegedly occurred between March 2011 and June 2017 in response to Plaintiff's requests for leave to manage her condition.  (*See generally* SAC, Dkt. 15.)  On a motion to dismiss, the Court narrowed Plaintiff's claims to those stemming from two discrete incidents and theories of liability, dismissing all other claims and the fourth Defendant.  *De Figueroa v. New York*, 403 F. Supp. 3d 133, 164 (E.D.N.Y. 2019).

First, the Court allowed an ADA retaliation claim to proceed against Defendant Gergen in his official capacity based on the denial of the 2015 Raise.  *Id.* at 162.  This claim was allowed to proceed on the theory that the denial of the 2015 Raise was retaliation for Plaintiff filing an EEOC complaint on July 23, 2015, which itself complained of retaliation for filing a complaint for Title VII and ADA violations with the New York State Division of Human Rights in 2013.  *Id.* at 147,

162; (EEOC Charge of Discrimination, Dkt. 25-7, at ECF 3).[4]   In its decision on the motion to dismiss, the Court noted that

> Plaintiff filed her second administrative charge with the EEOC in July 2015.  One month later, Plaintiff requested a salary increase in light of her increased job responsibilities.  Gergen denied Plaintiff's request on October 23, 2015 and accused Plaintiff of wrongdoing and performance deficiencies.  Liberally construed, these alleged adverse employment actions raise an inference of retaliatory intent.

*De Figueroa*, 403 F. Supp. 3d at 162 (internal record citations omitted).

Second, the Court allowed three claims to proceed based on the denial of the 2016 Bonus: a Rehabilitation Act claim against New York; a Rehabilitation Act claim against SUNY; and an FMLA retaliation claim against Gergen in his individual capacity.  *Id.* at 157–58, 161.  These claims were allowed to proceed on a theory that the denial of the 2016 Bonus was in retaliation for the filing of this lawsuit on January 26, 2017.[5]  *Id.*  The Court noted that, "[t]hough the actual date of this denial is unclear, the Court liberally construes the complaint to allege that this denial occurred shortly after Plaintiff filed her initial complaint in this action."  *Id.* at 157–58.

The case proceeded to discovery on those four claims.  Discovery is now closed, and Defendants have moved for summary judgment on all four remaining claims.  (*See* Defendants' Notice of Motion for Summary Judgment Dismissing Plaintiff's Second Amended Complaint, Dkt. 79.)  The Court concludes that Defendants' motion for summary judgment must be granted in its entirety.

---

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5] As discussed, though the record now clearly establishes that the bonus was denied in 2016, *i.e.*, before this lawsuit was filed, this retaliation claim survived Defendants' motion to dismiss because Plaintiff alleged in her complaint that she was denied the bonus around January 2017 and the Court "liberally construed" this allegation to identify an adverse action that had occurred shortly after she filed this lawsuit on January 26, 2017.

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (The summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248). "To present a 'genuine' issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact . . . ." *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019). Once this burden is met, the burden shifts to the nonmoving party to proffer some evidence establishing the existence of a question of material fact that must be resolved at trial. *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013) (quoting *Anderson*, 477 U.S. at 252). That is, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence . . . ." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021). It must "consider the record in the light most favorable to the non-movant" and "resolve all ambiguities and draw all factual inferences in favor of the non-movant 'if there is a "genuine" dispute as to those facts.'" *Loreley*, 13 F.4th at 259 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "[T]he district court may not properly consider the record in piecemeal fashion; rather, it must 'review all of the evidence in the record.'" *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

## DISCUSSION

### I.     The 2015 Raise

As discussed above, Plaintiff has one legal claim arising from the denial of her request for the 2015 Raise: an ADA retaliation claim against Defendant Gergen in his official capacity. *De Figueroa*, 403 F. Supp. 3d at 162.

#### A.     Legal Standard – ADA Retaliation

ADA retaliation claims are analyzed under the same three-step burden-shifting framework established for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Widomski v. State Univ. of New York (SUNY) at Orange*, 748 F.3d 471, 476 (2d Cir. 2014). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation by offering evidence that (1) the plaintiff participated in protected activity; (2) the defendant knew about the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019); *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019). The fourth element can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial

evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky*, 921 F.3d at 353.

If the plaintiff successfully establishes a *prima facie* case of retaliation, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 392 (2d Cir. 2020) (alteration omitted). If the defendant does so, the burden shifts back to the plaintiff, who must then establish that the "legitimate, non-retaliatory reason" offered by the employer is a mere pretext, and that the employer's "desire to retaliate" was the real "but-for cause of the challenged employment action." *Id.*

Under the but-for standard, "[i]t is not enough that retaliation was a substantial or motivating factor in the employer's decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015) (internal quotation marks omitted). "But-for causation does not, however, require proof that retaliation was the only cause of the employer's action." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). Ultimately, but-for causation "requires that the adverse action would not have occurred in the absence of the retaliatory motive." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307 (2d Cir. 2021) (internal quotation marks omitted).

"[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation through temporal proximity" between the protect activity and the adverse employment action. *Vega*, 801 F.3d at 91 (ellipsis omitted). However, while temporal proximity alone may be enough to establish a plaintiff's *prima facie* case, it is "not enough to establish pretext," *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014), and is "insufficient to defeat summary

7

judgment," *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013).  Rather, "a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at [the pretext] stage."  *Id*.

### B.    Application

Defendants argue that Plaintiff has not made out a *prima facie* case and, even if she had, Defendants have articulated a legitimate, non-retaliatory reason for denying Plaintiff the 2015 Raise, which Plaintiff has failed to demonstrate was pretextual.  (Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment Dismissing Plaintiff's Second Amended Complaint ("Def. Mem."), Dkt. 85, at 20–26.)  Indeed, in her opposition to the motion for summary judgment, Plaintiff addresses her FMLA and Rehabilitation Act claims, which both relate to the 2017 Bonus, but completely fails to mention her ADA retaliation claim, which is the only remaining claim related to the 2015 Raise.  (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem."), Dkt. 88, at 19–21 (addressing only "The FMLA Retaliation and the Rehabilitation Act Retaliation Claims").)  Plaintiff's omission makes it nearly impossible for the Court to decipher what evidence Plaintiff relies on for her *prima facie* case versus what evidence she relies on at the pretext stage.  That alone could be a reason to grant Defendants' motion on this claim.  *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) ("[A] partial response by the non-movant arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."  (brackets omitted)).

Nevertheless, the Court does not infer from Plaintiff's failure to mention the ADA retaliation claim in her opposition that she has abandoned it, as is required for the Court to deem it abandoned.  *See id.* (instructing district courts to affirmatively find that claims or defenses not

raised in oppositions were abandoned).  Rather, the Court believes that the omission of this claim

was the result of careless drafting, which is evident throughout Plaintiff's opposition to the motion

for summary judgment.  The Court thus addresses this claim on the merits.

On the merits, the Court finds that: Plaintiff has established a *prima facie* case on the ADA

retaliation claim; Defendants have articulated legitimate, non-discriminatory reasons for denying

Plaintiff the 2015 Raise; and Plaintiff has failed to put forth enough evidence for a reasonable jury

to find that Defendants' non-discriminatory reasons were pretextual, or that the adverse action

would not have occurred in the absence of the retaliatory motive.  The Court therefore finds that

summary judgment in favor of Defendants must be granted on this claim.

    1.    <u>Prima Facie Case</u>

Defendants argue that Plaintiff cannot make out a *prima facie* case because she cannot

produce any evidence of the fourth element of an ADA retaliation claim, *i.e.*, that there was a

causal connection between the protected activity and the adverse action.  (Def. Mem., Dkt. 85, at

20–22.)  As noted, this element can be satisfied either "(1) indirectly, by showing that the protected

activity was followed closely by discriminatory treatment, or through other circumstantial

evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2)

directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."

*Natofsky*, 921 F.3d at 353.

    a.    <u>Direct Evidence of Retaliatory Intent</u>

Defendants argue that "the record is devoid of any direct evidence of retaliatory animus,

as there is no admissible evidence that Gergen threatened Plaintiff or made comments that would

indicate that Gergen had any retaliatory motive."  (Def. Mem., Dkt. 85, at 21.)  This argument

zeroes in on an evidentiary dispute between the parties.  In depositions, three witnesses—Plaintiff,

Kristen Seitz, and Albert J. Wilkinson—all testified that three other individuals—Mary Bernero,

Virgil Acuff, and Paula Di Pasquale-Alvarez[6]—all heard Defendant Gergen make derogatory comments about people who take FMLA leave, sometimes specifically referring to Plaintiff, Seitz, and Wilkinson, and reported those comments back to them.[7]  (*See* Deposition of Desiree De Figueroa ("De Figueroa Tr."), Dkt. 80-2, at 16:1–18:13, 53:22–54:9, 80:25–81:12; Deposition of Kristen Seitz ("Seitz Tr."), Dkt. 83-2, at 103:19–104:5; Deposition of Albert J. Wilkinson ("Wilkinson Tr."), Dkt. 83-3, at 55:11–60:18.)  Those derogatory comments included statements such as people who take FMLA leave are "screwing the Department."  (*See* De Figueroa Tr., Dkt. 80-2, at 16:2-5; Seitz Tr., Dkt. 83-2, at 103:19–104:5; Wilkinson Tr., Dkt. 83-3, at 57:6–16.)

---

[6] In many of the filings by both parties, Di Pasquale-Alvarez's name is spelled Dipasquale Alvarez or simply Dispasquale.  The Court uses the spelling that Di Pasquale-Alvarez used in her own declaration.  (*See* July 18, 2022 Declaration of Paula Di Pasquale-Alvarez ("Di Pasquale-Alvarez Decl."), Dkt. 92-1.)

[7] Plaintiff raises these statements not as evidence of the fourth element of an ADA retaliation claim, which Plaintiff does not address, but as evidence of the fourth element of her FMLA retaliation claim, which is that an adverse employment action "occurred under circumstances giving rise to an inference of retaliatory intent."  (Pl. Mem., Dkt. 88, at 19–20); *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016).  Plaintiff also erroneously states that "[D]efendants[] have acknowledged that the sole issue in [P]laintiff's FMLA retaliation and the Rehabilitation Act retaliation claims are the fourth element, an adverse employment action that occurred under circumstances giving rise to an inference of retaliatory intent."  (Pl. Mem., Dkt. 88, at 19.)  The fourth element of FMLA and Rehabilitation Act retaliation claims are different, *compare Graziadio*, 817 F.3d at 429 (stating elements of an FMLA retaliation claim, which differ from the elements of an ADA retaliation claim) *with Natofsky*, 921 F.3d at 353 (same elements apply to retaliation claims under the Rehabilitation Act and ADA).  Defendants did not make this error in their papers.  (*See* Def. Mem., Dkt. 85, at 14–15 (FMLA retaliation elements), 19–20 (ADA and Rehabilitation Act retaliation elements).)  Rather, without referring to them as the fourth elements, Defendants correctly point out that the fourth element of an FMLA retaliation claim is an adverse employment action occurring under circumstances giving rise to an inference of retaliatory intent, whereas the fourth element of an ADA or Rehabilitation Act retaliation claim is that a causal connection exists between the protected activity and the adverse action.  The Court need not, and therefore does not, reach the fourth elements of either the FMLA or Rehabilitation Act retaliation claims, for the reasons explained below, but examines this testimony as possible evidence of the fourth element of an ADA retaliation claim.

Defendants argue that the testimony of Plaintiff, Seitz, and Wilkinson on this issue would be inadmissible hearsay and therefore does not create a material factual dispute that defeats summary judgment.  (Def. Mem., Dkt. 85, at 16–18 & n.9.)  Defendants are partially correct. While this testimony does constitute inadmissible hearsay, in opposing a motion for summary judgment, the nonmoving party need not "produce evidence in a form that would be admissible at trial." *Celotex*, 477 U.S. at 324.  "Rather, so long as the evidence in question 'will be presented in admissible form *at trial*,' it may be considered at summary judgment." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (emphasis added) (quoting *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001)).  Here, after the summary judgment briefing was complete, the Court believed that the testimony in question could hypothetically be "reduced to admissible form at trial through the testimony of" Bernero, Acuff, and Di Pasquale-Alvarez, the individuals who allegedly heard Gergen make the derogatory statements directly.  *See id.*  If Bernero, Acuff, or Di Pasquale-Alvarez were to testify about Gergen's alleged comments, that testimony would not be inadmissible hearsay for at least two reasons.  First, it would not be offered for its truth—*e.g.*, for the fact that people who take FMLA leave are "screwing the department"—but for the fact that Gergen made the comment (thereby arguably supporting the inference that Gergen had negative feelings about employees who took FMLA leave).  Fed. R. Evid. 801(c)(2).  And second, because the comments would be statements of a party opponent.  Fed. R. Evid. 801(d)(2).

Accordingly, the Court asked for the parties' position on whether Bernero, Acuff, or Di Pasquale-Alvarez would be available to testify at trial.  (06/28/2022 Docket Order.)  Plaintiff responded that Bernero and Di Pasquale-Alvarez would be available to testify because they are still SUNY employees and reside within this Court's jurisdiction, but that Acuff would not be available to testify because he is no longer a SUNY employee and does not reside in this Court's

jurisdiction.  (Dkt. 91 at 1.)  Defendants confirmed that Bernero and Di Pasquale-Alvarez still work for SUNY, but submitted affidavits from each stating that they had never heard Gergen make any disparaging comments about people who take FMLA leave and that they had never told anyone that Gergen had made such comments.  (Dkt. 92 at 3–4; *see also* Di Pasquale-Alvarez Decl., Dkt. 92-1, ¶¶ 3–4; July 14, 2022 Declaration of Mary Ann Bernero ("Bernero Decl."), 92-2, ¶¶ 4–5.) Accordingly, Plaintiff has failed to demonstrate that the purported testimony about Gergen's comments could be reduced to admissible form at trial, and thus this evidence cannot be considered on summary judgment.

Plaintiff argues that Plaintiff's, Seitz's, and Wilkinson's testimony about the comments of Bernero, Acuff, and Di Pasquale-Alvarez should be admissible under the residual exception to the hearsay rule, Federal Rule of Evidence 807.  (Dkt. 91 at 1–2.)  Rule 807 allows inadmissible hearsay to be admitted when (1) the statement is supported by sufficient guarantees of trustworthiness, after considering the totality of circumstances under which it was made, and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.  Fed. R. Evid. 807.  Here, the Court does not find that either requirement is satisfied.  Particularly with respect to the second element, the testimony of Plaintiff, Seitz, and Wilkinson would not be more probative on the point of whether Gergen made derogatory comments than the testimony of Bernero and Di Pasquale-Alvarez, who purportedly heard Gergen's statements directly.

The Court has also considered whether, if Bernero and Di Pasquale-Alvarez were called as witnesses and testified that they had never heard Gergen make derogatory comments about people who take FMLA leave, Plaintiff's, Seitz's, and Wilkinson's testimony on this issue could be admitted as extrinsic evidence of a prior inconsistent statement.  *See* Fed. R. Evid. 613.  That

possibility, however, is foreclosed by Second Circuit precedent.  "[A] third party's characterization of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization."  *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (internal quotation marks omitted).[8]  Here, Bernero and Di Pasquale-Alvarez have not only *not* subscribed to Plaintiff's, Seitz's, and Wilkinson's characterization of their alleged prior statements, but have affirmatively disclaimed those characterizations.  (Di Pasquale-Alvarez Decl., Dkt. 92-1, ¶¶ 3–4; Bernero Decl., Dkt. 92-2, ¶¶ 4–5.)  Accordingly, Plaintiff's, Seitz's, and Wilkinson's testimony on the issue of whether Gergen ever made anti-FMLA comments simply would not be inadmissible at trial.  In addition, the Court notes that Defendant Gergen has repeatedly denied making any statements disparaging people who take FMLA leave, and thus he also could not be expected to testify that he made the statements attributed to him.  (*See* December 15, 2020 Deposition of John Peter Gergen ("Gergen Tr."), Dkt. 83-1, at 35:10–36:12; May 3, 2021 Declaration of J. Peter Gergen in Support of Defendants' Motion for Summary Judgment Dismissing Plaintiff's Second Amended Complaint ("Gergen Decl."), Dkt. 80, ¶¶ 7–9.)

Plaintiff has thus put forth no direct evidence of retaliatory animus, and therefore must rely on indirect evidence to support the fourth element of her ADA retaliation claim.[9]

---

[8] While the Court can foresee situations where this rule might have to give way because of the highly probative nature of the evidence for impeachment or other purposes, perhaps under the residual exception—such as where a witness tells a room full of people that he observed a crime, but later recants that statement—but this is not such a case.

[9] Defendants correctly point to Plaintiff's own deposition for the fact that, outside of the statements allegedly made by Gergen and reported by Bernero, Acuff, and Di Pasquale-Alvarez, Plaintiff can cite no action that Gergen took that showed overt hostility to people who take FMLA leave.  (Defendants' Rule 56.1 Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment ("Def. 56.1"), Dkt. 84, ¶ 11.)  Plaintiff objects to this argument by pointing to paragraphs 29 through 44 of her Second Amended Complaint.  (Plaintiff's Responses and Objections to Defendants Local Rule 56.[1] Statement ("Pl. 56.1"), Dkt. 89, ¶ 11.)  However, none of those paragraphs discuss actions taken by Gergen that show overt hostility to people who take FMLA leave; rather, they only discuss Plaintiff's belief that she was the most qualified candidate

b.    Indirect Evidence of Retaliatory Intent

As noted, the fourth element of an ADA retaliation claim may be demonstrated "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Natofsky*, 921 F.3d at 353.  Plaintiff has put forth no evidence of disparate treatment of fellow employees who engaged in similar conduct—or other circumstantial evidence—and thus must rely on the temporal proximity between her protected activity and the allegedly retaliatory employment action.

In this Court's Memorandum & Order on the motion to dismiss, the Court, in fact, relied on that temporal proximity to find that Plaintiff had established a *prima facie* case:

> Plaintiff filed her second administrative charge with the EEOC in July 2015.  One month later, Plaintiff requested a salary increase in light of her increased job responsibilities.  Gergen denied Plaintiff's request on October 23, 2015 and accused Plaintiff of wrongdoing and performance deficiencies.  Liberally construed, these alleged adverse employment actions raise an inference of retaliatory intent.

*De Figueroa*, 403 F. Supp. 3d at 162 (internal record citations omitted).

Defendants concede that discovery has confirmed the facts on which the Court relied in its prior decision—that the EEOC complaint was filed on July 23, 2015 and that Gergen denied Plaintiff's request for a raise on October 23, 2015—but now, relying on a string of district court decisions from this circuit, argue that "a passage of more than two months between the protected

---

for a promotion given earlier in 2015.  (SAC, Dkt. 15, ¶¶ 29–44.)  Furthermore, Plaintiff's Second Amended Complaint is not verified, and thus cannot create a triable issue of fact.  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), *abrogated on other grounds*, *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020); *Wozniak v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.—UAW, Loc. 897*, 842 F.2d 633, 636 (2d Cir. 1988).  Additionally, even if the Amended Complaint were verified, allegations in a prior complaint that are contradicted by a later deposition cannot create a triable issue of fact.  *Taylor v. Ridley*, 904 F. Supp. 2d 222, 233 (E.D.N.Y. 2012) (collecting cases).

activity and the adverse employment action does not allow for an inference of causation."  (Def. Mem., Dkt. 85, at 21.)  The Court rejects this argument.

It is true that some courts in this circuit have found that, "[i]n the absence of additional facts plausibly connecting an adverse employment action to protected activity, a gap of just a few months [is] insufficient to infer a causal connection."  *Soto v. Marist Coll.*, No. 17-CV-7976 (KMK), 2019 WL 2371713, at *11 (S.D.N.Y. June 5, 2019) (collecting district court cases).  It is also true that the Second Circuit has fastidiously avoided drawing a "bright line" defining the outer limits "beyond which a temporal relationship is too attenuated to establish [causation]."  *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020) ("We . . . have not drawn a 'bright line' as to exactly when a temporal relationship supports a finding of a causal relationship.").  Furthermore, in *Gorman-Bakos*, the Court ultimately concluded that four months between a protected activity and an adverse employment action "is sufficient to support an allegation of a causal connection strong enough to survive a summary judgment motion."  252 F.3d at 555.

The Court finds *Gorman-Bakos* in keeping with Second Circuit precedent suggesting that an adverse employment action within five months of protected activity is sufficient to establish a *prima facie* case of retaliation.  *See, e.g.*, *Specht v. City of New York*, 15 F.4th 594, 605 (2d Cir. 2021) (holding that five months between protected conduct was "sufficient to permit an inference of causation"); *Rasmy*, 952 F.3d at 391 ("[F]ive months is not too long to find the causal relationship."); *Ibok v. Sec. Indus. Automation Corp.*, 369 F. App'x 210, 213 (2d Cir. 2010) ("A temporal relationship between the protected activity and the adverse action—even when they are as much as five months apart—can establish a prima facie case of retaliation."); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("[W]e have previously held that five

15

months is not too long to find the causal relationship."); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (eight-month gap between EEOC complaint and retaliatory act suggested causal relationship).[10]  The Court also finds it consistent with practical experience and common sense that a period of four to five months between a protected activity and an adverse employment action is sufficient to raise an inference of causation.[11]  After all, a plaintiff's burden at the *prima facie* stage is "*de minimis*."  *Lenzi*, 944 F.3d at 112.

---

[10] The primary Second Circuit case cited for the proposition that a period of three months is too long to suggest a causal relationship is *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990).  Although the panel in that case found that the plaintiff had "not offered any evidence which would fulfill the final requirement of a causal nexus," *id.* at 85, it did not expressly consider whether the three-month temporal proximity was evidence of this element.  Furthermore, in affirming the district court's grant of summary judgment, the panel did not clearly indicate whether it was assessing the plaintiff's *prima facie* case or ultimate burden to demonstrate that the adverse action was "because of" retaliation.  Finally, as noted, since *Hollander*, the Second Circuit has repeatedly held that temporal proximity is sufficient to establish a *prima facie* case, though not pretext, *see Abrams*, 764 F.3d at 254; *Zann Kwan*, 737 F.3d at 847, and that a temporal gap of up to five months could give rise to an inference of retaliatory intent at the *prima facie* stage.  *See*, *e.g.*, *Rasmy*, 952 F.3d at 391.

[11] Defendants assert that "this Court recently observed that courts in the Second Circuit have routinely found that the passage of two or three months between the protected conduct and adverse employment action, 'unsupported by any other allegations showing plausible retaliation,' are insufficient to raise an inference of retaliation," citing *Fukelman v. Delta Air Lines, Inc.*, No. 18-CV-2 (PKC) (PK), 2020 WL 4587496, at *19 (E.D.N.Y. Apr. 13, 2020), *report and recommendation adopted*, 2020 WL 2781662 (E.D.N.Y. May 29, 2020).  (*See* Def. Mem., Dkt. 85, at 21–22.)  This Court observed no such thing.  The quoted language is from a report and recommendation ("R&R") submitted to the Court.  The R&R contained the quoted language in the section stating the legal standard, but found a lack of causation as to most claims because there simply was no date at all connected to either the protected activities or the adverse employment actions.  *Fukelman*, 2020 WL 4587496, at *19–22.  For that and other reasons—including that the plaintiffs in *Fukelman* did not object to the R&R's causation findings—this Court did not address the "two to three month" proposition.  *See generally*, *Fukelman*, 2020 WL 2781662.  Furthermore, the cases cited for that proposition in the *Fukelman* R&R were actually inapposite.  The R&R cited *Soto*, the Southern District of New York case discussed above, which collected cases observing that "a few months has been held insufficient to infer a causal connection," but which, as in *Fukelman*, ultimately found no evidence of causation by temporal proximity because the plaintiff "d[id] not provide the date he engaged in protected activity."  2019 WL 2371713, *11 (internal quotations marks omitted).  The R&R also cited *Vega*, which noted that "five months is not too

16

Accordingly, the Court finds that Plaintiff has offered some evidence that there was a causal connection between the protected activity and the adverse action, and has thus met her minimal burden to show a *prima facie* case of ADA retaliation.  The burden thus shifts to Defendants to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Rasmy*, 952 F.3d at 392 (alteration omitted).

### 2. Legitimate, Non-Retaliatory Explanation

Defendants have easily met their burden of articulating a legitimate, non-retaliatory reason for denying Plaintiff the 2015 Raise.  They have put forth four pieces of evidence, which point to still other pieces of admissible evidence, that are all consistent with respect to their reasons for denying Plaintiff the 2015 Raise.

First, there are contemporaneous emails between Plaintiff and Gergen in which Gergen explains in detail the legitimate, non-discriminatory reasons that he did not support her request for the 2015 Raise.  (Gergen Decl., Ex. C ("Emails"), Dkt. 80-3.)  On October 16, 2015, Mary Bernero, Plaintiff's supervisor, forwarded Gergen Plaintiff's request for a raise.  (*Id.* at ECF 3.)  Gergen briefly replied to Plaintiff the same day, noting that "[f]rom my current understanding of things I do not believe [the raise] can be justified, but there may be circumstances that I am not aware of," and informing Plaintiff that he was away on a meeting until October 22, 2015, and any action would need to wait until he returned.  (*Id.*)

On October 23, 2015, Gergen sent Plaintiff an email explaining why he did not support Plaintiff's request for a raise.  (*Id.* at 2–3.)  Gergen wrote: "I have met with Mary [Bernero] to discuss your request.  Based on this conversation and after some further consideration I should tell

---

long to find the causal relationship," 801 F.3d at 91, and *Gorzynski*, which also noted that "five months is not too long to find the causal relationship," 596 F. 3d at 110–11.

you that I cannot support your current request for an increase in salary or an upgrade in position."

(*Id.* at 2.)  Gergen acknowledged that Plaintiff had "significant responsibilities for ordering for a

number of lab courses" and that she was "doing a good job with these duties."  (*Id.*)  However, as

to new work that might warrant a pay increase above the union-mandated annual increase, Gergen

wrote:

> In my view, the major new responsibility that you have been given in the last few
> years in addition to your ordering responsibilities is to be the primary technical
> support person on staff for BIO 311, the upper division Molecular Techniques lab
> course.  This course aligns with your expertise, and you have a past record as an
> excellent Instructor in this course.  Based on these attributes I was hoping that you
> would find satisfaction in supporting this course and provide advice and leadership
> that would help the faculty member who was re-assigned to this course deliver a
> quality product.  To be blunt, I have been extremely disappointed with your efforts
> in this regard.  I have received fairly regular complaints regarding the lack of
> professional support that has been provided to BIO 311 from numerous individuals.
> Indeed, I have received a request from a Graduate Program Director to no longer
> assign students from their Program to this course and the two most recent Chairs of
> the Department of Biochemistry and Cell Biology have asked me what I intend to
> do to improve the support provided to this course.

(*Id.*)  Gergen concluded the email by stating that he did not want to spend time pointing fingers

and casting blame, and instead proposed ideas for how everyone could work together to improve

the course.  (*Id.* at 2–3.)

The second piece of evidence supporting Defendants' legitimate, non-retaliatory reason for

denying Plaintiff the 2015 Raise is a declaration from Defendant Gergen.  (Gergen Decl., Dkt. 80.)

Plaintiff objects to most of Defendants' statements of undisputed material facts that rely on

Gergen's declaration, mystifyingly arguing that those statements are "in violation of Fed. R. Civ.

P. 56(c)(1)(A)" because they rely on Gergen's declaration and not "a record produced in this case."

(*See, e.g.*, Plaintiff's Responses and Objections to Defendants Local Rule 56.[1] Statement ("Pl.

56.1"), Dkt. 89, ¶¶ 24–28.)  Rule 56(c)(1)(A) states that "[a] party asserting that a fact cannot be

or is genuinely disputed must support the assertion by citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or *declarations*, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A) (emphasis added).[12] Accordingly, Plaintiff's procedural objection to Defendants' reliance on Gergen's declaration is meritless.

Furthermore, Gergen's declaration—as to which Plaintiff offers no contradictory evidence—corroborates the legitimate, non-retaliatory reasons for denying Plaintiff's request for the 2015 Raise, and adds further details that are all consistent with his October 23, 2015 email to Plaintiff.  (Gergen Decl., Dkt. 80, ¶¶ 10–18.)  Gergen's declaration explains that the BIO 311 Professor refenced in the email was Professor Susan Erster, and provides these details:

> [A]t the beginning of each semester, [Professor Erster] had requested that [Plaintiff] provide her with information regarding the quantity, concentration and purity of the starting materials for the students' experiments, but [Plaintiff] had failed to provide the information she had requested.  Professor Erster also communicated to me her frustration with the problems that the students, graduate assistants and she were having in the course, as evidenced in part by the complaints I received from the Graduate Program Director and successive Chairs of the Department of Biochemistry and Cell Biology.
>
> Professor Erster also told me about her conversation with [Plaintiff] where [Plaintiff] stated she was only doing what she felt she "had to do" for the BIO 311 course.  She also told me about [Plaintiff]'s unwillingness to update the lab manual for the course.  In fact, in an effort to assist Professor Erster and the course, I arranged for a grant to pay a graduate assistant, Jenn Martinez, to revise and update the lab manual.
>
> Finally, I am aware that [Plaintiff] refused to take any responsibility for the problems in the BIO 311 course, and instead blamed those problems in the course on another employee in the Professional Lab Staff or on Professor Erster, who [Plaintiff] asserted was not supervising the teaching assistants as closely as prior course directors had done.

---

[12] Indeed, it is common practice for parties to rely on declarations at summary judgment, and thus concerning to the Court that Plaintiff's counsel was apparently unaware of this.

(*Id.* ¶¶ 13–15.)

Gergen also specified by name the Graduate Program Director and two recent Chairs of the Department of Biochemistry and Cell Biology who had made "fairly regular complaints" about Plaintiff's performance, namely Professors Wali Karzai, Robert Haltiwanger, and Aaron Neiman. (*Id.* ¶ 12.) Finally, Gergen stated that Mary Bernero "agreed with my assessment that [Plaintiff]'s support of BIO 311 had not improved and that her performance did not warrant an additional salary increase." (*Id.* ¶ 16.) Gergen concluded that "the reasons set forth above, and in my October 23, 2015 e-mail to [Plaintiff]," rather than Plaintiff's EEOC complaint or requests for FMLA leave, "were the *sole* reasons for my decision [not to support Plaintiff's request for the 2015 Raise]." (*Id.* ¶ 18.)

The Court notes that the statements made to Gergen by Professor Erster, Plaintiff, and others would not be inadmissible hearsay and, even if they were, may be considered on summary judgment. The statements would not be inadmissible hearsay because they would not be admitted for the truth of the matter—*i.e.*, that Plaintiff had underperformed—but for their effect on Gergen's decision not to support Plaintiff's request for the 2015 Raise. Fed. R. Evid. 801(c)(2). Second, even if Gergen's recollection of the comments were inadmissible hearsay, now that the speakers have been identified by name and given that they work for the University, there is every reason to believe that the statements could be "reduced to admissible form at trial through the testimony of" the speakers. *Smith*, 697 F. App'x at 89. Furthermore, the statements ascribed to Plaintiff by these professors or other staff would be admissible as statements of a party opponent. Fed. R. Evid. 801(d)(2). Gergen's declaration thus provides additional support for Defendants' non-retaliatory reasons for denying Plaintiff's request for the 2015 Raise, and points to still more admissible evidence confirming those reasons.

Indeed, Professor Erster also submitted her own declaration in support of the present motion for summary judgment—the third piece of evidence supporting Defendants' non-retaliatory reasons for the adverse employment action.  (April 18, 2021 Declaration of Susan H. Erster, Dkt. 82.)  In it, Professor Erster wrote that she requested specific information from Plaintiff prior to each course taught between 2013 through 2016, and that Plaintiff "failed to provide me with the evidence and information I requested."  (*Id.* ¶ 5.)  "As a result, the students in the course during those four years were *never* successful in generating recombinant DNA molecules on their own, something that is extraordinarily rare."  (*Id.*)  Professor Erster also stated that, "sometime during the Spring 2013 semester, [Plaintiff] admitted to me that she was doing only what she 'had to do' for the course . . . because the course was no longer fun and important to her."  (*Id.* ¶ 8.)  Professor Erster continued:

> [Plaintiff]'s lack of commitment was also reflected in her reluctance to update the lab manual to accurately describe the equipment, reagents and protocols.  Although I asked [Plaintiff] to make the necessary revisions to the lab manual, she failed to do so, and ultimately the revisions were made by others (mostly by a grad student named Jenn Martinez).  In addition, [Plaintiff] labelled "in house" generated solutions and samples in a shorthand that was meaningless to anyone other than her.  [Plaintiff] continued to do this, despite my complaints about this practice to her immediate supervisor, Mary Bernero, the Head Curator of the Professional Lab Staff, and Professor Gergen.
>
> Although I repeatedly discussed with [Plaintiff] the problems that the students and I were experiencing, she usually blamed any problems on another employee in the Professional Lab Staff and/or refused to take any responsibility for finding a solution.  [Plaintiff] also told me that I was not her supervisor and she did not report to me, and therefore I should speak with her supervisor, Ms. Bernero[,] regarding the problems I was having.  I did in fact repeatedly speak with Ms. Bernero about these problems, who each time told me she would look into the issue.  But despite my many efforts, I was never able to obtain [Plaintiff]'s cooperation in solving the problems I described.  I also spoke with other people about these repeated problems, including two different Chairs of the Department of Biochemistry and Cell Biology, Professors Robert Haltiwanger and Aaron Neiman (who succeeded Professor Haltiwanger in 2015).  Ultimately, these repeated problems with the course, and an inability to find a solution to them, led to the decision to stop offering the course following the Spring 2016 semester.

21

(*Id.* ¶¶ 9–10.)

As with Gergen's declaration, Plaintiff objects to Defendants' statements of undisputed material facts that rely on Professor Erster's declaration because they are "in violation of Fed. R. Civ. P 56 (c) (1) (A), in that, the referenced declaration does not cite to a record produced in this case." (*See, e.g.*, Pl. 56.1, Dkt. 89, ¶ 27.)  As discussed, that objection is nonsensical on its face. The Court also reiterates that the statements in Professor Erster's declaration attributed to Plaintiff would be admissible at trial as statements of a party opponent.   Fed. R. Evid. 801(d)(2). Furthermore, the statements in Professor Ertser's declaration attributed to Mary Bernero could be reduced to an admissible form at trial through the testimony of Ms. Bernero, and thus may be properly considered on this motion for summary judgment. *Smith*, 697 F. App'x at 89.  Professor Erster's declaration thus provides even further support for Defendants' legitimate, non-retaliatory reasons for denying Plaintiff's request for the 2015 Raise.

The fourth piece of evidence supporting Defendants' legitimate, non-retaliatory reasons for not granting Plaintiff's request for the 2015 Raise is the deposition testimony of Defendant Gergen. (Gergen Tr., Dkt. 83-1.) Though largely duplicative of Gergen's declaration for purposes of trial, Gergen's deposition testimony constitutes another piece of record evidence supporting Defendants' position for purposes of summary judgment, and makes it all the more likely that Gergen's trial testimony would be consistent with the record evidence and unimpeachable.

At his deposition, Gergen testified that Plaintiff's request for a salary increase was "not justified based on her responsibilities or her performance." (*Id.* at 44:21–22.)  He noted that, "[a]t that point in time, the course that she had primary responsibility for, she was not doing an adequate job in terms of supporting the faculty member that was teaching the course." (*Id.* at 45:2–5.) He identified Professor Erster as the instructor for that class, and stated that Professor Erster had

complained that Plaintiff was "not doing an adequate job at preparing the reagents and supplies that were needed for the lab class to run." (*Id.* at 45:6–18.)  He also recalled that Professors Wali Karzai, Robert Haltiwanger, and Aaron Neiman had also made complaints about Plaintiff.  (*Id.* at 47:2–18.)

Based on all of the above, Defendants have satisfied their burden of "articulating a legitimate, non-retaliatory reason for the [complained-of] adverse employment action." *Rasmy*, 952 F.3d at 392 (brackets omitted).  The burden thus shifts back to Plaintiff, who must establish that the "legitimate, non-retaliatory reason" offered by the employer is a mere pretext, and that the real "but-for cause of the challenged employment action" was the employer's "desire to retaliate." *Id.*

### 3.    Pretext and But-For Causation

Plaintiff established her *prima facie* case exclusively through the temporal proximity between her protected activity and adverse employment action.  (*See supra* Section I.B.1.) However, as discussed, while temporal proximity alone might be enough to establish a plaintiff's *prima facie* case of retaliation, it is "not enough to establish pretext," *Abrams*, 764 F.3d at 254, and is "insufficient to defeat summary judgment," *Zann Kwan*, 737 F.3d at 847.  Plaintiff therefore must put forth "other evidence such as inconsistent employer explanations, to defeat summary judgment" at the pretext stage.  *Zann Kwan*, 737 F.3d at 847.

As discussed, the alleged statements by Gergen, conveyed to Bernero, Acuff, and Di Pasquale-Alvarez, would not be admissible at trial and cannot be considered on summary judgment, and thus those statements cannot provide support for Plaintiff's position that Defendants' legitimate, non-discriminatory reasons for the adverse employment action were pretextual.  (*See supra* Section I.B.1.a.)

Plaintiff dedicates only one paragraph to the issue of pretext.  As with the rest of Plaintiff's papers, she does not distinguish which arguments or pieces of evidence relate to the 2015 Raise versus the 2017 Bonus, forcing the Court to attempt to do that work.  In her paragraph on pretext, Plaintiff argues that "Gergen has made pretextual excuses that a jury must determine the veracity of his statements."  (Pl. Mem., Dkt. 88, at 21.)  Plaintiff asserts that the following evidence creates a triable issue of fact on the issue of pretext: "Plaintiff's outstanding performance as stated in her July 1, 2015, through June 30, 2016, Performance Evaluation and in her July 1, 2017 through June 30, 2018, Performance Evaluation and a recommendation for a salary increase from her immediate supervisor, Mary Bernero."  (*Id.*)

The July 1, 2017 through June 30, 2018 Performance Evaluation is irrelevant to Defendants' denial of Plaintiff's request for the *2015* Raise, and Plaintiff does not specify when Plaintiff received "a recommendation for a salary increase from her immediate supervisor, Mary Bernero."  (*See id.*)  However, Plaintiff is presumably referring to the 2017–2018 evaluation which, on page 5, under a section titled "Supervisory Plan," contains the following note from Mary Bernero: "I recommend [Plaintiff] for a merit salary increase."  (Declaration of Attorney for Plaintiff in Support of Opposition to Motion for Summary Judgment ("Wade Decl."), Ex. 3 ("2017–2018 Performance Evaluation"), Dkt. 90-3, at ECF 6.)

Accordingly, the only piece of evidence listed by Plaintiff in support of pretext that could apply to the 2015 Raise is the 2015–2016 Performance Evaluation.  Although Plaintiff's counsel, Locksley O. Wade, apparently intended to attach that performance evaluation to his declaration in support of Plaintiff's opposition to the motion for summary judgment, Mr. Wade failed to do so, instead attaching the 2017–2018 Performance Evaluation and a 2018–2019 Performance Evaluation, which is not relevant to any pending claim.  (*See* Wade Decl. & Exs. 2, 3, Dkts. 90,

90-2, 90-3.)  Before deciding this motion, the Court thus asked Plaintiff to "file on the docket any performance evaluations that cover dates in or around 2015 to 2016."  (06/28/2022 Docket Order.)

Plaintiff filed two performance evaluations covering July 1, 2015 through June 30, 2016, one "signed by the plaintiff and her supervisor," and the other "a revised version for the same time period that Defendant Gergen ordered; however, it was rejected by the plaintiff."  (*See* Dkt. 91, at ECF 1; *see also* Dkts. 91-1, 91-2.)  Unfortunately, with respect to the first version, it appears that Mr. Wade has still failed to upload the entire document.  The evaluation is only four pages long, and both the fifth page and section titled "Supervisory Plan," where Ms. Bernero recommended that Plaintiff receive a merit salary increase in the 2017–2018 Performance Evaluation, are missing.  (*See* Dkt. 91-1.)  The second version of the 2015–2016 Performance Evaluation does contain the fifth page and section titled "Supervisory Plan," but there is no recommendation for a merit salary increase for that year.  (Dkt. 91-1 at ECF 6.)

Given that the Court specifically requested a performance evaluation covering the period of 2015–2016, coupled with the fact that one of Plaintiff's only arguments in support of pretext was that Ms. Bernero recommended a discretionary pay increase, the Court must assume that, had Ms. Bernero recommended a discretionary pay increase in the original 2015–2016 Performance Evaluation, Mr. Wade would have submitted that portion of the evaluation and drawn the Court's attention to it in his declaration.  As it stands, the only evidence on the point of whether Ms. Bernero supported Plaintiff's request for the 2015 Raise comes from Gergen's declaration, in which he states that Ms. Bernero "agreed with my assessment that [Plaintiff]'s support of BIO 311 had not improved and that her performance did not warrant an additional salary increase."  (Gergen Decl., Dkt. 80, ¶ 16.)

Furthermore, the two 2015–2016 Performance Evaluations that are (finally) in the record simply could not enable a reasonable jury to find that Defendant Gergen's legitimate, non-discriminatory reasons for declining Plaintiff's request for the 2015 Raise were pretextual and that Plaintiff's filing of an EEOC complaint was a but-for cause of the adverse employment action. The version of the evaluation prepared by Ms. Bernero and signed by Plaintiff does indeed express general satisfaction with Plaintiff's performance.   However, satisfaction with an employee's performance does not suggest that the employee should receive a discretionary raise above and beyond a union-mandated annual pay increase.   Indeed, as discussed above, the only evidence available on this point indicates that Ms. Bernero did not recommend that Plaintiff receive a merit pay increase for her work covering the relevant period of time, even though it is clear from the 2017–2018 Performance Evaluation that she was willing to, and would, recommend a merit increase when she thought one was warranted.

In addition, Defendant Gergen's reasons for not supporting Plaintiff's request for the 2015 Raise were based on far more than Ms. Bernero's opinion.   He also cited the opinions of Professors Erster, Karzai, Haltiwanger, and Neiman, which uniformly did not support a raise.   (*See* Gergen Decl., Dkt. 80, ¶¶ 12–15; Gergen Tr., Dkt. 83-1, at 45:6–18, 47:2–18.)  Of particular importance to Gergen were the reports from Professor Erster that Plaintiff's performance in the BIO 311 course had been unsatisfactory.   (*See generally* Emails, Dkt. 80-3; Gergen Decl., Dkt. 80, ¶¶ 10–18.)  In that respect, the 2015–2016 Performance Evaluations submitted by Plaintiff actually support Gergen's legitimate, non-retaliatory reasons for not supporting Plaintiff's request for the 2015 Raise.   The two versions of the 2015–2016 Performance Evaluations are substantially similar. (*Compare* Dkt. 91-1 *with* Dkt. 91-2.)  The most notable additions to the second (revised) version of 2015–2016 Performance Evaluation that Gergen allegedly ordered are the following:

Given [Plaintiff's] experience it is disappointing that there are continuing issues with the failure of some of the labs, particularly in BIO 311.

. . .

[Plaintiff] was not as effective as hoped in meeting the expectations of the BIO 311 instructor.

. . .

The Department would benefit if [Plaintiff] did a better job in ensuring that certain labs had file materials needed for them to be successful.

(Dkt. 91-2 at ECF 5.)

In sum, the 2015–2016 Performance Evaluations plainly do not provide any "inconsistent employer explanations" for Gergen's decision not to support Plaintiff's request for the 2015 Raise. *See Zann Kwan*, 737 F.3d at 847. Instead, they actually provide a fifth piece of evidence, which— along with the four pieces of evidence discussed in Section I.B.2 above—are all entirely consistent about Gergen's legitimate, non-retaliatory reasons for not supporting Plaintiff's request for the 2015 Raise. The 2015–2016 Performance Evaluations thus do not support an inference of pretext.

Furthermore, even if Ms. Bernero's positive 2015–2016 evaluation were enough to suggest that Plaintiff's filing of an EEOC complaint was a "substantial or motivating factor" in denying Plaintiff the 2015 Raise, that would not be enough to satisfy the but-for standard. *Vega*, 801 F.3d at 90–91 (internal quotation marks omitted). Considering the evidence as a whole, a reasonable jury simply could not find that Gergen's decision not to support Plaintiff's request for the 2015 Raise "would not have occurred in the absence of the retaliatory motive." *Lively*, 6 F.4th at 307 (internal quotation marks omitted).

Accordingly, summary judgment must be granted in favor of Defendants on Plaintiff's ADA retaliation claim relating to the 2015 Raise. *See Horror Inc.*, 15 F.4th at 240–41 (citing *Anderson*, 477 U.S. at 249–50).

## II.     The 2016 Bonus

Summary judgment also must be granted in Defendants' favor on all of Plaintiff's retaliation claims relating to the 2016 Bonus because discovery has revealed that the alleged adverse employment action occurred *before* Plaintiff engaged in the protected activity of filing this lawsuit.   In this Court's Memorandum & Order on Defendants' motion to dismiss, the Court allowed three retaliation claims to proceed based on the denial of the 2016 Bonus, on the theory that the denial of the 2016 Bonus was retaliation for the filing of this lawsuit on January 26, 2017. *De Figueroa*, 403 F. Supp. 3d at 157–58, 161–62.  The Court noted that, "[t]hough the actual date of this denial is unclear, the Court liberally construes the complaint to allege that this denial occurred shortly after Plaintiff filed her initial complaint in this action."  (*Id.* at 25.)  Discovery, however, has shown that the date of the denial preceded the filing of this lawsuit, and thus the denial of the 2016 Bonus could not have been retaliation for filing this lawsuit.

Defendants assert that it is undisputed that Gergen recommended two other individuals, and not Plaintiff, for the 2016 Bonus on October 16, 2016, and that the Office of the Dean of the College of Arts and Sciences approved Gergen's recommendation in December 2016, all before Plaintiff filed this lawsuit in January 26, 2017.  (Def. 56.1, Dkt. 84, ¶¶ 41, 45.)  Defendants' assertions are based on declarations from Defendant Gergen and Senior Vice Chancellor Sacha E. Kopp.  (*See id.*)

Once again, Plaintiff objects to these two statements of undisputed material facts, arguing that they are "in violation of Fed. R. Civ. P 56 (c) (1) (A)," in that, none of the referenced declarations "cite to a record produced in this case."  (Pl. 56.1, Dkt. 89, ¶¶ 41, 45.)   As discussed above, Plaintiff's Rule 56(c)(1)(A) objection is nonsensical on its face.  (*See supra* Section I.B.2.)

Plaintiff further responds by adopting and restating her objection to paragraph 23 [of Defendants' Local Rule 56.1 Statement] as if fully stated here."  (Pl. 56.1, Dkt. 89, ¶¶ 41, 45.)

28

That objection, however, refers to the performance evaluations discussed above, which are wholly irrelevant to the issue of whether the adverse employment action occurred before the protected activity.  (*Id.* ¶ 23.)  Paragraph 23 also incorporates Plaintiff's objections to paragraph 19 of Defendants' Local Rule 56.1 statement.  (*Id.*)  That objection, and paragraph 19 of Defendants' Local Rule 56.1 statement, deal exclusively with the 2015 Raise, and thus are also entirely irrelevant to whether Plaintiff filed this lawsuit before or after Defendants denied her the 2016 Bonus.  (*Id.* ¶ 19.)  Accordingly, there is no genuine dispute about when Gergen recommended that two other employees, and not Plaintiff, receive the 2016 Bonus, or when the Office of the Dean of the College of Arts and Sciences approved Gergen's recommendation.  Both occurred before Plaintiff filed this lawsuit in late January 2017, and thus Defendants' decision not to give Plaintiff the 2016 Bonus could not have been retaliation for Plaintiff filing this lawsuit.  No rational jury could find otherwise.

Plaintiff's opposition to the motion for summary judgment does not even address this basic lack of causation, let alone put forth any other theory on which not giving Plaintiff the 2016 Bonus could have been retaliation for Plaintiff engaging in any protected activity.  Accordingly, summary judgment must be granted in favor of Defendants on all of Plaintiff's remaining claims relating to the 2016 Bonus.

## CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is granted in full and this case is dismissed.  The Clerk of Court is respectfully directed to enter judgment accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 8, 2022
            Brooklyn, New York